**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| MARY GORDON, successor-in-interest for decedent, Matthew Shawn Gordon, individually, *Plaintiff-Appellant*, <br><br> v. <br><br> COUNTY OF ORANGE; ORANGE COUNTY SHERIFF'S DEPARTMENT; SANDRA HUTCHENS, Orange County Sheriff - Coroner; ORANGE COUNTY CENTRAL MEN'S JAIL; ORANGE COUNTY HEALTH CARE AGENCY; DOES, 5 through 10, inclusive; ROBERT DENNEY; BRIAN TUNQUE; BRIANNE GARCIA; DEBRA FINLEY, *Defendants-Appellees.* | No. 16-56005 <br><br> D.C. No. 8:14-cv-01050-CJC-DFM <br><br><br> OPINION |

Appeal from the United States District Court
for the Central District of California
Cormac J. Carney, District Judge, Presiding

Argued and Submitted December 8, 2017
Pasadena, California

Filed April 30, 2018

Before:  Kim McLane Wardlaw and Ronald M. Gould,
Circuit Judges, and Yvonne Gonzalez Rogers,[*]
District Judge.

Opinion by Judge Gonzalez Rogers

**SUMMARY**[**]

**42 U.S.C. § 1983**

The panel vacated the district court's summary judgment in a 42 U.S.C. § 1983 action alleging claims of inadequate medical care under the Due Process Clause of the Fourteenth Amendment, arising from the death of Matthew Gordon when he was a pretrial detainee in the Orange County Men's Central Jail; and remanded for further proceedings.

The panel held that given developments in Section 1983 jurisprudence, including the Supreme Court's decision in *Kingsley v. Hendrickson*, 135 S. Ct. 2466 (2015), and this court's *en banc* opinion in *Castro v. County of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016), the proper standard of review of such claims was one of objective indifference, not subjective indifference.  The panel held that because the district court applied a subjective standard to the plaintiff's claims of inadequate medical care against individual defendants, the grant of summary judgment was in error.

---

[*] The Honorable Yvonne Gonzalez Rogers, United States District Judge for the Northern District of California, sitting by designation.

[**] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

The panel declined to address the individual defendants' claim of qualified immunity in the first instance.

The panel held that the district court improperly granted summary judgment for the County of Orange and associated entities on the ground that the plaintiff could not establish a custom or practice sufficient under *Monell v. Department of Social Services*, 436 U.S. 658 (1978). The panel left this question for the district court to address in the first instance using the proper standard.

## COUNSEL

David A. Schlesinger (argued), Jacobs & Schlesinger LLP, San Diego, California; Cameron Sehat, The Sehat Law Firm PLC, Irvine, California; for Plaintiff-Appellant.

Pancy Lin (argued) and S. Frank Harrell, Lynberg & Watkins, Orange, California, for Defendants-Appellees.

## OPINION

GONZALEZ ROGERS, District Judge:

This case arises from the death of Matthew Gordon ("Gordon") within 30 hours of being detained in the Orange County Men's Central Jail (the "County Jail"). Plaintiff Mary Gordon, successor-in-interest for decedent, sued defendants Robert Denny, Brian Tunque, Brianne Garcia, and Debra Finley ("the Individual Defendants"); and the County of Orange and associated entities ("the Entity Defendants") under 42 U.S.C. § 1983 for violating Gordon's right to adequate medical care under the due process clause

of the Fourteenth Amendment. Given developments in Section 1983 jurisprudence, including the Supreme Court's decision in *Kingsley v. Hendrickson*, 135 S. Ct. 2466 (2015), and our *en banc* decision in *Castro v. County of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016), we conclude that the proper standard of review for such claims is one of objective indifference, not subjective indifference. Accordingly, summary judgment is vacated and the case is remanded to the district court for further proceedings consistent with this decision.

## PROCEDURAL HISTORY

The Individual Defendants sought summary judgment on the ground that the plaintiff lacked evidence of their alleged deliberate indifference to the decedent's health or safety. The Entity Defendants also sought summary judgment based upon the plaintiff's failure to show a custom or practice sufficient under *Monell v. Department of Social Services*, 436 U.S. 658 (1978). In this regard, the plaintiff had proceeded on two theories which she alleged led to Gordon's death. First, the plaintiff alleged the systematic use of the wrong intake form which resulted in the misclassification and misplacement of detainees. In particular, she claimed the Entity Defendants used a form designed to address alcohol withdrawal rather than one designed for opiate withdrawal. Second, she alleged the systematic failure to conduct welfare checks or "safety checks" from a vantage point which allowed for visual observation of the safety and welfare of all inmates.

The district court granted summary judgment in favor of the Individual Defendants reasoning that a due process challenge based on inadequate medical care required a showing of subjective deliberate indifference and that there was insufficient evidence to support that showing. The

district court also granted summary judgment in favor of the Entity Defendants on the plaintiff's *Monell* claim on the ground that the plaintiff failed to present sufficient evidence of a custom or practice. The plaintiff timely appealed.

## BACKGROUND

The events at issue began on September 8, 2013 at 6:47 p.m. and ended on September 9, 2013 at 11:00 p.m. Within less than 30 hours, Matthew Gordon died while detained in Module C, Tank 11 of the Orange County Jail.

On September 8, 2013, the Placentia Police Department arrested Gordon on heroin-related charges and transported him to the County Jail. Defendant nurse Debra Finley ("Nurse Finley") conducted an intake assessment of Gordon at 6:47 p.m. during which she inquired whether he "use[d] any street drugs." In response Gordon indicated that he used "[h]eroine, by IV, at 3 grams a day." To evaluate Gordon, Nurse Finley used an assessment form designed for alcohol withdrawal, entitled Clinical Institute Withdrawal Assessment for Alcohol ("CIWA"). She did not use the county's "Clinical Opiate Withdrawal Scale" ("COWS") assessment form.

Thereafter, defendant Nurse Finley consulted with non-party Dr. Thomas Le (a consulting physician) ("Dr. Le") who issued an "Opiate WD [Withdrawal] Order." Therein, Dr. Le both ordered that Gordon be placed in regular housing rather than medical unit housing and prescribed Tylenol for pain, Zofran for nausea, and Atarax for anxiety. Dr. Le apparently crossed out a section under the heading "Nursing Detox Assessments" which stated "COWS and Vital Signs on admission and daily x5" and instead handwrote "CIWA x 4 Days," that is, Gordon was to receive the ordered

protocol for four days.  Nurse Finley completed the intake assessment and had no further contact with Gordon.

The plaintiff's nursing expert opined that the county's COWS form would have measured symptoms specific to opiate withdrawal and triggered a need to house Gordon in the Medical Observation Unit where Gordon would have been monitored more closely.  The plaintiff's expert further opined that had the COWS form been used, it is more probable than not that Gordon would have been found to be in medical distress hours prior to his death.  The plaintiff proffered evidence that the Entity Defendants did not use the COWS form systematically, and changed their practice after Gordon's death.

Following his intake assessment, Gordon waited for nearly ten hours to be assigned a space in the County Jail's general population.  During this time a fellow detainee observed Gordon vomit continuously for 30–45 minutes and "curl up in a ball."  At approximately 8:30 a.m. on September 9, 2013, Gordon was transferred to Module C, Tank 11 in the County Jail along with a "module card" to advise the deputies that Gordon required medical attention. While Gordon was in Module C, defendant nurse Brianne Garcia, on three occasions, administered the medications which Dr. Le prescribed but had no further interaction with the decedent.

Defendant Deputy Denny ("Deputy Denny") conducted a welfare check of Module C at approximately 6:47 p.m. on September 9, 2013.  He then conducted a second and third check after lights out at 8:31 p.m. and 9:29 p.m., respectively.  The stated purpose of the checks was to "maintain the safety and health of the inmates and the security of the facilities" with "direct visual observation of each inmate . . . ."  Deputy Denny testified that he conducted

these three welfare checks from a corridor which was twelve to fifteen feet away from Gordon's bunk and was elevated approximately six feet from the Tank 11 floor. The plaintiff's evidence suggests that the checks were further obscured by a glass corridor. In any event, Deputy Denny acknowledged that from his vantage point he was unable to determine whether an inmate was "breathing," "alive," or had "potential indicators of a physical problem."

At approximately 10:46 p.m., inmates in Module C yelled "man down" to the deputies, the man being Gordon. Deputy Denny arrived within a couple of minutes. He testified that upon his arrival Gordon's "face was blue, he was unresponsive and his skin was cold to the touch." Medical staffers arrived a few minutes later and attempted to administer care. At 11:00 p.m. paramedics transported Gordon to Western Medical Center in Santa Ana where he was pronounced dead. The record reflects that defendant Brian Tunque was the supervising Sergeant on the night of the incident but was apparently not otherwise involved in events described herein.

## STANDARD OF REVIEW

We review the district court's decision to grant summary judgment de novo. *Qwest Commc'ns Inc. v. City of Berkeley*, 433 F.3d 1253, 1256 (9th Cir. 2006). Thus, viewing the evidence in the light most favorable to the nonmoving party, we must determine whether the district court correctly applied the relevant substantive law, and if so, whether genuine issues of material fact exist. *Fichman v. Media Ctr.*, 512 F.3d 1157, 1159 (9th Cir. 2008) (internal citation omitted).

## DISCUSSION

### A.  Section 1983 Claims after *Castro*

With this Court's *en banc* decision in *Castro*, we rejected the notion that a subjective deliberate indifference standard applied globally to all section 1983 claims, whether brought by pretrial detainees or by convicted prisoners.  *Castro*, 833 F.3d at 1069–71.  This decision addresses the standard for claims brought by pretrial detainees for inadequate medical care.

We briefly recount the jurisprudential history relevant here.  In *Estelle v. Gamble*, 429 U.S. 97, 104 (1976), the Supreme Court held that prison officials' "deliberate indifference to serious medical needs of prisoners" violates the Cruel and Unusual Punishment Clause of the Eighth Amendment.  In 1986, we concluded in *Carnell* that "even though pretrial detainees[sic] claims 'arise under the due process clause [of the Fourteenth Amendment], the [E]ighth [A]mendment guarantees provide *a minimum standard of care* for determining rights as a pretrial detainee, including rights . . . to medical care.'" *Carnell v. Grimm*, 74 F.3d 977, 979 (9th Cir. 1996) (quoting *Jones v. Johnson*, 781 F.2d 769, 771 (9th Cir. 1986) (emphasis in *Carnell*)).  Thus, prior to our decision in *Castro*, all conditions of confinement claims, including claims for inadequate medical care, were analyzed under a subjective deliberate indifference standard whether brought by a convicted prisoner under the Eighth Amendment or pretrial detainee under the Fourteenth Amendment.  *See Clouthier v. County of Contra Costa*, 591 F.3d 1232, 1242–43 (9th Cir. 2010) (finding a single "deliberate indifference" test for plaintiffs who bring a

constitutional claim—whether under the Eighth Amendment or the Fourteenth Amendment).[1]

In *Castro* we noted that our decision in *Clouthier* to create a single "deliberate indifference" standard for constitutional claims brought under the Eighth and Fourteenth Amendments was "cast . . . into serious doubt"

---

[1] *Clouthier* concerned a medical care case in which the parents of a pretrial detainee claimed that jail officials violated the due process rights of their son by failing to address his medical needs, in particular there, suicide prevention. *Clouthier*, 591 F.3d at 1240. The Court interpreted prior precedent "to require proof of punitive intent for failure-to-protect claims, whether those claims arise in a pretrial or a post-conviction context." *Castro*, 833 F. 3d at 1068 (citing *Clouthier*, 591 F.3d at 1236). "We further held that this standard incorporates the *subjective* test . . . ." *Id.* (citing *Clouthier*, 591 F.3d at 1242) (emphasis in original). Under this subjective test, the *Clouthier* Court held that "[a]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation," cannot support liability under the Fourteenth Amendment. *Clouthier*, 591 F.3d at 1242 (quoting *Farmer v. Brennan*, 511 U.S. 825, 838 (1994)).

*Clouthier* relied upon both *Farmer*, *supra*, and *Bell v. Wolfish*, 441 U.S. 520, 535 (1979) (finding that inmates who sue prison officials for injuries suffered while in custody may do so under the Eighth Amendment's Cruel and Unusual Punishment Clause or, if not yet convicted under the Fourteenth Amendment's Due Process Clause). In *Farmer*, the Supreme Court held that a prison official cannot be liable under the Eighth Amendment's Cruel and Unusual Punishment Clause for denying an inmate adequate conditions of confinement "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." 511 U.S. at 837. We interpreted *Farmer* to stand for the proposition that "the official must demonstrate a *subjective awareness* of the risk of harm." *Conn v. City of Reno*, 591 F.3d 1081, 1096 (9th Cir. 2010), *cert. granted and judgment vacated*, 563 U.S. 915 (2011), *opinion reinstated in relevant part*, 658 F.3d 897 (9th Cir. 2011) (emphasis in original).

by the Supreme Court's holding in *Kingsley*. *Castro*, 833 F.3d at 1068. In *Kingsley*, the Supreme Court had considered "whether, to prove an excessive force claim a pretrial detainee must show that the officers were *subjectively* aware that their use of force was unreasonable, or only that the officers' use of force was *objectively* unreasonable." *Kingsley*, 135 S. Ct. at 2470 (emphasis in original). The Supreme Court identified two "separate state-of-mind questions," namely the defendant's state of mind regarding (i) "his physical acts—*i.e.*, his state of mind with respect to the bringing about of certain physical consequences in the world" and (ii) "whether his use of force was excessive." *Id.* at 2472. With regard to the first question, defendants did not dispute that the officers' use of force was intentional. With regard to the second question, the Court held that "the relevant standard is objective not subjective." *Id.* Put differently, the Supreme Court explained that "a pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable." *Id.* at 2473.

Interpreting *Kingsley*, our decision in *Castro* extended the objective standard to failure-to-protect claims, reasoning, in part, that "Section 1983 itself 'contains no state-of-mind requirement independent of that necessary to state a violation' of the underlying federal right." *Castro*, 833 F.3d at 1069 (quoting *Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 405 (1997)); *see also Daniels v. Williams*, 474 U.S. 327, 330 (1986). We concluded that as with excessive force claims, failure-to-protect "claims arise under" the same constitutional framework. *Castro*, 833 F.3d at 1069–70. Thus "it does not matter whether the defendant understood that the force used was excessive, or intended it to be excessive, because the standard is purely objective." *Id.* at 1068 (citing *Kingsley*, 136 S. Ct. at 2472–73). In short,

in *Castro*, we declared that *Kingsley* "expressly rejected the interpretation of *Bell* on which we had relied in *Clouthier* . . . . [and] the notion that there exists a single 'deliberate indifference' standard applicable to *all* § 1983 claims, whether brought by pretrial detainees or by convicted prisoners." *Id*. (Emphasis in original.)

## B. Claims for Inadequate Medical Care by Pretrial Detainees

While *Kingsley* did "not necessarily answer the broader question of whether the objective standard applies to all Section § 1983 claims brought under the Fourteenth Amendment against individual defendants[,]" (*id.*) logic dictates extending the objective deliberative indifference standard articulated in *Castro* to medical care claims.[2] First, the landscape remains the same. As noted, we remain in a realm where "Section 1983 itself 'contains no state-of-mind requirement independent of that necessary to state a violation' of the underlying federal right" (*id*.) and here, the medical care claims brought by pretrial detainees also "arise under the Fourteenth Amendment's Due Process Clause, rather than under the Eighth Amendment's Cruel and Unusual Punishment Clause" (*id.* at 1069–70). Notably, the "broad wording of *Kingsley* . . . . did not limit its holding to 'force' but spoke to 'the challenged governmental action'

---

[2] The Second Circuit also recently extended the objective deliberate indifference standard to all conditions of confinement claims brought under the due process clause of the Fourteenth Amendment. *See Darnell v. City of New York,* 849 F.3d 17, 36 (2d Cir. 2017) (opining on a wide range of conditions of confinement claims brought by twenty pretrial detainees, the court held "[c]onsistency with the Supreme Court's decision in *Kingsley* now dictates that deliberate indifference be measured objectively in due process cases").

generally." *Id*. at 1070 (quoting *Kingsley*, 135 S. Ct. at 2473–74).

Second, the Supreme Court has treated medical care claims substantially the same as other conditions of confinement violations including failure-to-protect claims. For instance in 1991, in *Wilson v. Seiter*, the Supreme Court saw "no significant distinction between claims alleging inadequate medical care and those alleging inadequate 'conditions of confinement.' Indeed, the medical care a prisoner receives is just as much a 'condition' of his confinement as . . . the protection he is afforded against other inmates." *Wilson v. Seiter*, 501 U.S. 294, 303 (1991). Third, we have long analyzed claims that government officials failed to address pretrial detainees' medical needs using the same standard as cases alleging that officials failed to protect pretrial detainees in some other way.[3] *Simmons v. Navajo Cty., Ariz.*, 609 F.3d 1011, 1017–18 (9th Cir. 2010); *Clouthier*, 591 F.3d at 1241–42; *Lolli v. County of Orange*, 351 F.3d 410,418–19 (9th Cir. 2004).

Accordingly, we hold that claims for violations of the right to adequate medical care "brought by pretrial detainees against individual defendants under the Fourteenth Amendment" must be evaluated under an objective deliberate indifference standard. *Castro*, 833 F.3d at 1070. Based thereon, the elements of a pretrial detainee's medical

---

[3] Correspondingly, other circuit courts treat failure-to-protect claims as claims alleging failure to provide adequate medical care. *See Young v. City of Mount Rainier*, 238 F.3d 568, 575 (4th Cir. 2001) (concluding that a failure-to-protect claim was "no different in any meaningful respect from the indifferent-to-medical-needs claim"); *Hare v. City of Corinth*, 74 F.3d 633, 644 (5th Cir. 1996) (*en banc*) (noting "the absence of a constitutionally significant distinction between failure-to-protect and medical care claims").

care claim against an individual defendant under the due process clause of the Fourteenth Amendment are: (i) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (ii) those conditions put the plaintiff at substantial risk of suffering serious harm; (iii) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (iv) by not taking such measures, the defendant caused the plaintiff's injuries. "With respect to the third element, the defendant's conduct must be objectively unreasonable, a test that will necessarily 'turn[ ] on the facts and circumstances of each particular case.'" *Id.* at 1071 (quoting *Kingsley*, 135 S. Ct. at 2473; *Graham v. Connor*, 490 U.S. 386, 396 (1989)). The "'mere lack of due care by a state official' does not deprive an individual of life, liberty, or property under the Fourteenth Amendment." *Id.* (quoting *Daniels*, 474 U.S. at 330–31). Thus, the plaintiff must "prove more than negligence but less than subjective intent—something akin to reckless disregard."[4] *Id.*

---

[4] This differs from the inquiry under the Eighth Amendment which requires that the "prison official must *subjectively* have a sufficiently culpable state of mind." *Id*. at 1070–71 (quoting *Estate of Ford v. Ramirez-Palmer*, 301 F.3d 1043, 1049 (9th Cir. 2002) (emphasis in original)). "A prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety." *Estate of Ford*, 301 F.3d at 1050 (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). By contrast "a pretrial detainee need not prove those subjective elements about the officer's actual awareness of the level of risk." *Castro*, 833 F.3d at 1071.

Because the district court applied a subjective standard to the plaintiff's claim of inadequate medical care, the grant of summary judgment was in error.

## C. Qualified Immunity Under an Objective Standard

The Individual Defendants argue that even under an objective deliberate indifference standard they are immune from liability under the doctrine of qualified immunity. The district court did not reach this issue. Accordingly, we decline to address the question of qualified immunity in the first instance.

## D. The *Monell* Claim against the Entity Defendants

The district court also granted summary judgment for the Entity Defendants on the ground that the plaintiff could not establish a custom or practice sufficient under *Monell*. In light of this opinion, the grant of summary judgment was improper. We also leave this question for the district court to address in the first instance using the proper standard.

Accordingly, summary judgment as to all defendants is **VACATED** and **REMANDED** for further proceedings consistent with this opinion.