**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

KELVIN HERNANDEZ ROMAN;
BEATRIZ ANDREA FORERO CHAVEZ;
MIGUEL AGUILAR ESTRADA, on
behalf of themselves and all others
similarly situated,
    *Plaintiffs-Petitioners-Appellees*,

v.

CHAD F. WOLF, Acting Secretary,
U.S. Department of Homeland
Security; TONY H. PHAM, Senior
Official Performing the Duties of the
Director, U.S. Immigration and
Customs Enforcement; DAVID
MARIN, Director of the Los Angeles
Field Office, Enforcement and
Removal Operations, U.S.
Immigration and Customs
Enforcement; JAMES JANECKA,
Warden, Adelanto ICE Processing
Center,
 *Defendants-Respondents-Appellants.*

No. 20-55436

D.C. No.
5:20-cv-00768-
TJH-PVC

OPINION

Appeal from the United States District Court
for the Central District of California
Terry J. Hatter, Jr., District Judge, Presiding

Argued and Submitted September 15, 2020
San Francisco, California

Filed October 13, 2020

Before: Paul J. Watford, Michelle T. Friedland, and
Eric D. Miller, Circuit Judges.

Per Curiam Opinion;
Concurrence by Judge Miller

## SUMMARY[*]

### Immigration / Preliminary Injunction

In the Government's appeal of a district court preliminary injunction in response to Plaintiffs' claims that conditions at the Adelanto Immigration and Customs Enforcement Processing Center ("Adelanto") placed them at unconstitutional risk of contracting COVID-19, the panel: 1) affirmed in part because the district court had broad equitable authority to grant provisional relief to remedy a likely constitutional violation; 2) vacated in part in light of changed circumstances at Adelanto; and 3) remanded for the district court to address current circumstances.

The district court certified a class of 1,370 Adelanto detainees and granted a preliminary injunction that, *inter alia*, imposed a moratorium on receipt of new detainees,

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

required specific sanitation measures, mandated compliance with guidance from the U.S. Centers for Disease Control and Prevention ("CDC"), and ordered the detainee population to be reduced to enable social distancing. The Government appealed, and a motions panel, in an unpublished order, granted the Government's emergency motion for a stay pending appeal, except to the extent the injunction required substantial compliance with CDC guidelines.

After this panel heard oral argument, the Government revealed that 38 detainees had tested positive for COVID-19. Plaintiffs sought a temporary restraining order ("TRO") compelling the Government to test all Adelanto detainees and isolate all who tested positive. The district court denied the TRO and later denied reconsideration, stating that its "hands have been tied by the Ninth Circuit's stay." The parties then informed this court that, as of September 22, there were 58 confirmed COVID-19 cases among detainees and eight among staff members. The Government stated its intention to test all detainees and staff, noting that just over half of the 774 detainees had been tested. Plaintiffs then filed an emergency motion, asking this court to clarify or to partially lift the motions panel's emergency stay, and this panel issued an unpublished version of this opinion on September 23, 2020.

Responding to the Government's argument that a district court on habeas review may not order injunctive relief to remedy unconstitutional conditions of confinement, the panel concluded that it need not reach that issue because Plaintiffs' action for declaratory and injunctive relief independently provided jurisdiction to hear their challenges and authority to grant the relief sought.

The panel held that the district court did not abuse its discretion by issuing some form of preliminary injunctive relief, explaining that the district court rightly concluded that Plaintiffs were likely to prevail on the merits of their due process claim. In light of the district court's detailed factual findings, which the Government had not shown to be clearly erroneous, the panel agreed that the Government likely failed to meet its constitutional duty to provide reasonably safe conditions to Plaintiffs.

The panel also held that the district court correctly concluded that Plaintiffs were likely to suffer irreparable harm absent relief given COVID-19's high mortality rate, and held that the equities and public interest tipped in Plaintiffs' favor, particularly in light of the lack of criminal records of many of the detainees and the alternative means available to prevent them from absconding if released.

The panel further held that the district court did not err by provisionally certifying a class of all Adelanto detainees. Noting that the alleged due process violations exposed *all* Adelanto detainees to an unnecessary risk of harm and that the preliminary injunction afforded class-wide relief, the panel concluded that the district court did not abuse its discretion in holding that Plaintiffs had satisfied the commonality, adequacy, and typicality requirements of Federal Rule of Civil Procedure 23(a) and the uniform remedy requirement of Rule 23(b)(2).

The panel vacated the provisions of the preliminary injunction that ordered specific measures to be implemented at Adelanto because the district court tailored those measures to circumstances as of mid-April but, in the intervening months, circumstances had changed dramatically. It now appeared that Adelanto was housing only 748 detainees,

significantly fewer than in April, and that the facility was now experiencing a COVID-19 outbreak, to which the Government was responding by testing all detainees and adjusting its procedures. The panel remanded for proceedings consistent with this disposition and the latest facts.

In a simultaneously filed memorandum disposition, the panel dismissed, for lack of jurisdiction, the Government's challenge to orders establishing a procedure for entertaining individual applications for bail.

Concurring in part and concurring in the judgment, Judge Miller joined all of the court's opinion except for Part IV, in which the court concluded that "the Government likely failed to meet its constitutional duty to provide reasonably safe conditions to Plaintiffs." Judge Miller wrote that, to prevail, Plaintiffs must prove more than negligence and must show something akin to reckless disregard. Judge Miller stated that, perhaps the plaintiffs were likely to establish a constitutional violation on the record before the court in April, or perhaps not, but at this point the question was academic.

## COUNSEL

Scott G. Stewart (argued), Deputy Assistant Attorney General; Hans H. Chen and Victor M. Mercado-Santana, Trial Attorneys; William K. Lane III, Counsel; Jeffrey S. Robins, Deputy Director; William C. Peachey, Director; Ethan P. Davis, Acting Assistant Attorney General; Office of Immigration Litigation, Civil Division, United States Department of Justice, Washington, D.C., for Respondents-Appellants.

Samir Deger-Sen (argued), William M. Friedman, Margaret A. Upshaw, and James Tomberlin, Latham & Watkins LLP, Washington, D.C.; Amanda Barnett and Jessie Cammack, Latham & Watkins LLP, Los Angeles, California; Ahilan Arulanantham, Michael Kaufman, Jessica Karp Bansal, and Michelle (Minju) Cho, ACLU Foundation of Southern California, Los Angeles, California; for Petitioners-Appellees.

Joshua A. Matz, Michael Skocpol, Mahrah M. Taufique, and Jacob Miller, Kaplan Hecker & Fink, New York, New York; Mark Rosenbaum, Judy London, Talia Inlender, Jesselyn Friley, and Amanda Savage, Public Counsel, Los Angeles, California; for Amici Curiae Nikolas Bowie, Erwin Chemerinsky, Michael Dorf, Leah Litman, Pamela S. Karlan, Amanda Shanor, David Strauss, Laurence H. Tribe, Stephen I. Vladeck, Ten Experts in Medicine and Public Health, and Physicians for Human Rights.

Lawrence J. Joseph, Washington, D.C.; Christopher J. Hajec, Director of Litigation, Immigration Reform Law Institute, Washington, D.C.; for Amicus Curiae Immigration Reform Law Institute.

Genevieve Quinn, Seton Hartnett O'Brien, and Praatika Prasad, Gibson Dunn & Crutcher LLP, New York, New York; David Debold, Caroline Ziser Smith, and Natasha Harnwell-Davis, Gibson Dunn & Crutcher LLP, Washington, D.C.; Jacob Rierson, Gibson Dunn & Crutcher LLP, Denver, Colorado; for Amici Curiae National Immigration Justice Center and Human Rights Watch.

## OPINION

PER CURIAM:

In this interlocutory appeal, the Government[1] challenges a preliminary injunction entered by the district court in response to Plaintiffs' claims that conditions at the Adelanto Immigration and Customs Enforcement Processing Center ("Adelanto"), where they were detained, placed them at unconstitutional risk of contracting COVID-19. A week after we heard oral argument, we received a joint status report from the parties informing us that, in the prior week, 58 detainees and eight staff members had tested positive for COVID-19 at Adelanto, and over 300 detainees were still awaiting their test results. Nine detainees had been hospitalized.

---

[1] Defendants-Appellants are Chad F. Wolf, Acting Secretary of Homeland Security; Tony H. Pham, Senior Official Performing the Duties of the Director, U.S. Immigration and Customs Enforcement ("ICE"); David Marin, Director of the Los Angeles Field Office for ICE's Enforcement and Removal Operations; and James Janecka, Warden of Adelanto. We refer to them collectively as "the Government." Pham has been automatically substituted for Matthew T. Albence, former Deputy Director and Senior Official Performing the Duties of the Director of ICE. Fed. R. App. P. 43(c)(2).

We affirm in part because the district court had broad equitable authority to grant provisional relief to remedy a likely constitutional violation.  In light of the changed circumstances at Adelanto since the preliminary injunction was entered, however, we vacate it in part and remand so that the district court may address the current circumstances at Adelanto.

## I.

Plaintiffs brought this class action on behalf of noncitizens detained at Adelanto.  These noncitizens are being held in civil detention in connection with various immigration proceedings, and many of them have no criminal record.  Plaintiffs seek declaratory and injunctive relief, as well as habeas relief.  Their Complaint alleges that, in light of the COVID-19 pandemic, Adelanto's failure to implement necessary protective measures—including social distancing, sanitation, and the provision of sufficient masks and soap—violates detainees' due process rights under the Fifth Amendment.  On April 23, 2020, the district court certified a class of 1,370 Adelanto detainees and granted a preliminary injunction that, *inter alia*, imposed a moratorium on Adelanto's receipt of new detainees, required specific sanitation measures, mandated compliance with guidance issued by the U.S. Centers for Disease Control and Prevention ("CDC"), and ordered the facility's detainee population to be reduced to a level that would enable social distancing.  The district court left to the Government's discretion whether to achieve the requisite population reduction by deporting selected detainees, transferring selected detainees to other facilities, or releasing selected detainees with appropriate conditions of release.  The court likewise allowed the Government to determine which detainees to release, deport, or transfer.

The Government timely appealed and sought an emergency stay of the preliminary injunction pending appeal, which a motions panel, in an unpublished order, granted, except to the extent the preliminary injunction "require[d] substantial compliance with guidelines issued by the [CDC] for correctional and detention facilities to follow in managing COVID-19."

We heard oral argument on September 15, 2020. The next day, in response to an inquiry from Plaintiffs' counsel, the Government revealed to Plaintiffs' counsel that 38 detainees had tested positive for COVID-19 at Adelanto.

In the district court, Plaintiffs filed an *ex parte* application for a temporary restraining order ("TRO") on September 16, 2020, seeking an order compelling the Government to test all Adelanto detainees (using rapid, point-of-care tests, if possible) and to isolate all detainees who received positive test results. The Government filed a status report, which the district court construed as an opposition to the TRO application. The district court denied the application for a TRO on September 17, 2020, without specifying its reasoning.

The following day, Plaintiffs filed an *ex parte* application for reconsideration of the district court's denial of their motion for a TRO and sought a further TRO. Specifically, Plaintiffs requested that the district court order the Government to:

> (1) Test all detainees at Adelanto; (2) Isolate, in single occupancy cells, all detainees who have tested positive for COVID-19 and all detainees who are awaiting test results; (3) Prevent staff who worked in the West 5C and West 5D housing units from returning to

> work pending their COVID-19 test results,
> even if they are asymptomatic; (4) Suspend
> intake of new detainees into Adelanto; and
> (5) Provide daily status reports.

Plaintiffs acknowledged that the Government was already
undertaking some of the measures requested but contended
that the Government had neither adopted the isolation
protocols proposed by Plaintiffs nor suspended its receipt of
new detainees into Adelanto.  The Government again
opposed the motion.

In an order issued on September 22, 2020, the district
court expressed concern about the adequacy of the
Government's response to the outbreak, but it stated that its
"hands have been tied by the Ninth Circuit's stay."  The
district court therefore denied reconsideration, but it
instructed the parties to file a joint status report "regarding
Adelanto's Covid-19 outbreak" with our court, which we
received later that same afternoon.

The parties' report informed us that, as of September 22,
there were 58 confirmed COVID-19 cases among detainees
and eight among staff members.  More than half of the
detainees who had received results tested positive.  Twenty
of the COVID-19-positive detainees belong to a medically
vulnerable group at the greatest risk of suffering severe
complications, and nine detainees were hospitalized.  The
Government stated its intention to test all Adelanto detainees
and staff.  Just over half of the 774 detainees had been tested
by September 20.  Tests apparently take at least three days
to return results, so the parties were awaiting results for
hundreds of detainees.

We received an emergency motion from Plaintiffs on the
evening of September 22, several hours after we received the

parties' status report, asking us to clarify or to partially lift the emergency stay imposed by the motions panel.**[2]** The emergency motion asserted that the Government had not imposed measures at Adelanto necessary to counter the developing outbreak. Among other things, Plaintiffs reported that the detainees in the housing unit with confirmed cases were being held "two per cell," less than six feet apart; new detainees were continually being brought into the facility; and only some of the detainees had been tested for the virus so far. Plaintiffs asked us to clarify that the emergency stay of the district court's preliminary injunction did not "deprive[] [the district court] of authority to order appropriate isolation protocols and a temporary halt to new intakes" in light of the changed circumstances presented by the current outbreak. Plaintiffs requested, in the alternative, that we "lift the stay insofar as it prohibits the district court from responding to the current crisis." In light of the urgency of the situation described in the emergency motion, we issued an unpublished version of this opinion on September 23.**[3]**

## II.

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his

---

**[2]** The Government indicated that it opposed the emergency motion.

**[3]** In addition to its interlocutory appeal of the preliminary injunction, the Government filed a separate interlocutory appeal of procedural orders relating to the processing of bail applications—orders that were entered by the district court months after the preliminary injunction was issued and stayed. We resolve that separate appeal in a memorandum disposition filed simultaneously with this opinion.

favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Where the government is a party to a case in which a preliminary injunction is sought, the balance of the equities and public interest factors merge. *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014). Further, where the "balance of hardships . . . tips sharply towards the plaintiff," a plaintiff need only show "serious questions going to the merits," rather than likelihood of success on the merits, to warrant preliminary injunctive relief. *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011) (quotation marks and citation omitted). Injunctions that alter the status quo "are not granted unless extreme or very serious damage will result and are not issued in doubtful cases." *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 879 (9th Cir. 2009) (quotation marks omitted).

We review a district court's decision to grant or deny a preliminary injunction for abuse of discretion. *Sw. Voter Registration Educ. Project v. Shelley*, 344 F.3d 914, 918 (9th Cir. 2003) (en banc) (per curiam). We review the district court's legal conclusions de novo and its factual findings for clear error. *K.W. ex rel. D.W. v. Armstrong*, 789 F.3d 962, 969 (9th Cir. 2015).

A district court's decision regarding class certification is also reviewed for abuse of discretion. *Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979, 984 (9th Cir. 2015).

## III.

As a threshold matter, the parties dispute whether district courts have authority to order the types of relief in the preliminary injunction in response to habeas claims. Specifically, the Government argues that a district court on

habeas review may not order reductions in the number of detainees held at a facility, or any other injunctive relief, to remedy unconstitutional conditions of confinement. We need not reach that issue to resolve this appeal because, separately from their habeas petition, Plaintiffs brought a class action complaint for declaratory and injunctive relief seeking to remedy allegedly unconstitutional conditions at Adelanto. That action for declaratory and injunctive relief independently provided the district court jurisdiction to hear Plaintiffs' challenges and authority to grant the types of relief that Plaintiffs sought.

Courts have long recognized the existence of an implied cause of action through which plaintiffs may seek equitable relief to remedy a constitutional violation. *See Sierra Club v. Trump*, 963 F.3d 874, 888 (9th Cir. 2020) ("Certain provisions of the Constitution give rise to equitable causes of action.") (citing cases), *petition for cert. filed* (U.S. Aug. 7, 2020) (No. 20-138). Here, Plaintiffs' due process claims arise under the Constitution, and Plaintiffs invoked 28 U.S.C. § 1331, which provides subject matter jurisdiction irrespective of the accompanying habeas petition. Moreover, an implied cause of action exists for Plaintiffs to challenge allegedly unconstitutional conditions of confinement. *See Simmat v. U.S. Bureau of Prisons*, 413 F.3d 1225, 1230–32, 1236 (10th Cir. 2005) (observing that "[f]ederal courts have long exercised the traditional powers of equity, in cases within their jurisdiction, to prevent violations of constitutional rights," and holding that federal courts have jurisdiction under 28 U.S.C. § 1331 over federal prisoners' constitutional claims for injunctive relief against prison officials); *see also Ziglar v. Abbasi*, 137 S. Ct. 1843, 1862–63 (2017) (noting that, apart from *Bivens* or habeas relief, noncitizen detainees could seek injunctive relief to challenge their conditions of confinement); *Bell v.*

*Wolfish*, 441 U.S. 520, 526 n.6 (1979) (declining to decide whether habeas is a proper vehicle for pretrial detainees in federal custody to challenge conditions of confinement because "jurisdiction would have been provided by 28 U.S.C. § 1331(a)"). Therefore, the district court had the authority both to entertain Plaintiffs' constitutional challenges and to grant injunctive relief in response to them.

Further, the district court's power to grant injunctive relief included the authority to order a reduction in population, if necessary to remedy a constitutional violation. "Once a [constitutional] right and a violation have been shown, the scope of a district court's equitable powers to remedy past wrongs is broad, for breadth and flexibility are inherent in equitable remedies." *Swann v. Charlotte-Mecklenburg Bd. of Educ.*, 402 U.S. 1, 15 (1971); *see also Stone v. City & County of San Francisco*, 968 F.2d 850, 861 (9th Cir. 1992) ("Federal courts possess whatever powers are necessary to remedy constitutional violations because they are charged with protecting these rights."). In time-sensitive circumstances, the district court's authority to issue broad equitable relief encompassed the authority to grant provisional relief "to bring an ongoing violation to an immediate halt." *Hutto v. Finney*, 437 U.S. 678, 687 n.9 (1978).

In *Brown v. Plata*, 563 U.S. 493 (2011), for example, the Supreme Court affirmed the conclusion of a three-judge district court that prison overcrowding had resulted in Eighth Amendment violations in California prisons. *Id.* at 545. Because no other relief would cure the violations, the Court agreed that an order limiting the prison population to a specific percentage of design capacity, which may have required state officials to release some prisoners, was an appropriate remedy. *Id.* at 500–02. Similarly, Plaintiffs here

argued that changes in sanitation conditions at Adelanto are necessary, but not sufficient, to cure the alleged Fifth Amendment violation and that a reduction in the facility's population was required for detainee safety. As in *Brown*, the district court in this case was permitted to order the reduction of Adelanto's population, which may have required the release of some detainees, if such a remedy was necessary to cure the alleged constitutional violations.

## IV.

We hold that the district court did not abuse its discretion by issuing some form of preliminary injunctive relief in response to Plaintiffs' due process claims. The district court made detailed factual findings in support of the preliminary injunction, none of which the Government challenged in its brief on appeal as being clearly erroneous. For instance, the district court accepted as true Plaintiffs' declarations and other evidence that the following conditions were present at Adelanto: the Government had failed to impose social distancing because there were "too many detainees at Adelanto for its size"; newly arrived detainees were either mixed with the general population or housed with other new detainees who had arrived at different times, both of which undermined the ostensible 14-day quarantine period for new arrivals; staff were not required to wear gloves and masks; there was a lack of necessary cleaning supplies, which led some detainees to clean their toilets with shampoo or to clean common areas using only a dirty towel and bucket of dirty water; given the inadequate supplies, the cleaning of communal spaces was "haphazard, at best"; there were only three functioning showers for 118 women; there was inadequate access to hand sanitizer because dispensers were often empty and detainees had to wait for days to receive hand soap; and detainees were forced to sleep within six feet

of each other due to the positions of their beds.  In light of these factual findings, which the Government has not shown to be clearly erroneous, we agree with the district court that the conditions at Adelanto in April violated detainees' due process right to reasonable safety.**[4]**

The Fifth Amendment requires the government to provide conditions of reasonable health and safety to people in its custody.  *See DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 199–200 (1989); *Doe v. Kelly*, 878 F.3d 710, 714 (9th Cir. 2017).  The government has violated this duty when:

> (i) [It] made an intentional decision with respect to the conditions under which the plaintiff was confined; (ii) those conditions put the plaintiff at substantial risk of suffering serious harm; (iii) the [government] did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved . . . ; and (iv) by not taking such measures, the [government] caused the plaintiff's injuries.

---

**[4]** Plaintiffs pursue two related Fifth Amendment due process theories.  The first argues that the conditions at Adelanto are unconstitutionally punitive, *see Bell v. Wolfish*, 441 U.S. 520, 535–37 (1979), whereas the second argues that the Government violated Plaintiffs' right to reasonable safety while in the Government's custody, *see DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 199–200 (1989).  Because we hold that the district court was justified in granting preliminary relief based on the "reasonable safety" theory, we do not address the merits of the "punitive conditions" theory here.

*Gordon v. County of Orange*, 888 F.3d 1118, 1125 (9th Cir. 2018).  "With respect to the third element, the [government's] conduct must be objectively unreasonable, a test that will necessarily 'turn[] on the facts and circumstances of each particular case.'"  *Castro v. County of Los Angeles*, 833 F.3d 1060, 1071 (9th Cir. 2016) (en banc) (second alteration in original) (quoting *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015)).  A "mere lack of due care" is not enough; a plaintiff must show "something akin to reckless disregard."  *Gordon*, 888 F.3d at 1125 (quoting *Castro*, 833 F.3d at 1071).  To satisfy the fourth element, a plaintiff need only prove a "sufficiently imminent danger[]," because a "remedy for unsafe conditions need not await a tragic event."  *Helling v. McKinney*, 509 U.S. 25, 33–34 (1993).

We agree with the district court that the Government likely failed to meet its constitutional duty to provide reasonably safe conditions to Plaintiffs.  At the time the injunction issued, Adelanto was so crowded that social distancing to combat the spread of the novel coronavirus was impossible, detainees had inadequate access to masks, guards were not required to wear masks, there was not enough soap or hand sanitizer to go around, detainees were responsible for cleaning the facility with only dirty towels and dirty water, detainees were compelled to sleep with less than six feet of distance between them, and not all new arrivals were being properly quarantined or tested.  The Government was aware of the risks these conditions posed, especially in light of high-profile outbreaks at other carceral facilities that had already occurred at the time, and yet had not remedied the conditions.  Its inadequate response reflected a reckless disregard for detainee safety.  The district court therefore rightly concluded that Plaintiffs were likely to prevail on the merits.  *Cf. Helling*, 509 U.S. at 35

(holding that the health risk posed by a prison inmate's involuntary exposure to second-hand smoke could form the basis of a claim that the government was violating his right to reasonable safety).**[5]**

---

**[5]** We recognize that our sister circuits have reached a variety of conclusions when presented with cases about COVID-19 risks in carceral settings. *Compare Mays v. Dart*, — F.3d —, 2020 WL 5361651, at *1, *9 (7th Cir. 2020) (affirming in part a preliminary injunction that mandated sanitation measures and mask availability in a county jail), *and Valentine v. Collier*, 960 F.3d 707, 708 (5th Cir. 2020) (per curiam) (Davis, J., concurring in the judgment) (noting that "inmates are now being held under circumstances that seriously threaten their life"), *and id.* (Graves, J., specially concurring) (noting that the inmates were likely to succeed on the merits of their constitutional challenge to conditions of confinement), *with Wilson v. Williams*, 961 F.3d 829, 840–41 (6th Cir. 2020) (holding that inmates were unlikely to prevail on their deliberate indifference claim), *and Swain v. Junior*, 958 F.3d 1081, 1089 (11th Cir. 2020) (holding that pretrial detainees were unlikely to prevail on a deliberate indifference claim). Some of these cases arose in the context of criminal detention, and thus the deliberate indifference claims there, unlike due process challenges to civil detention conditions, required an analysis of prison officials' subjective intent to harm. *See, e.g.*, *Wilson*, 961 F.3d at 840 (holding that while the objective prong was "easily satisfied," the subjective prong would likely prevent plaintiffs' success on the merits because officials responded reasonably). Moreover, each case must be evaluated on its specific factual record because "objective reasonableness turns on the facts and circumstances of each particular case." *Kingsley*, 576 U.S. at 397 (quotation marks and citation omitted). Here, the district court gave the Government an opportunity to present evidence and expert testimony before making specific factual findings that supported its conclusion that plaintiffs would likely succeed on the merits and that they would likely suffer irreparable harm. *Cf. Hope v. Warden York Cnty. Prison*, — F.3d —, 2020 WL 5001785, at *4 (3d Cir. 2020) (critiquing district court for not permitting the government to offer evidence or giving it an opportunity to be heard before ordering injunctive relief); *id.* at *13 (critiquing a lack of "specific findings").

The district court also correctly concluded that Plaintiffs were likely to suffer irreparable harm absent relief given COVID-19's high mortality rate. Finally, the district court rightly concluded that the equities and public interest tipped in Plaintiffs' favor, particularly in light of the lack of criminal records of many of the detainees and the alternative means available to prevent them from absconding if they were released, such as electronic monitoring.

## V.

We further hold that the district court did not err by provisionally certifying a class of all Adelanto detainees. The alleged due process violations exposed *all* Adelanto detainees to an unnecessary risk of harm, not only those who are uniquely vulnerable to COVID-19 or who are not subject to mandatory detention. The preliminary injunction afforded class-wide relief that would have remedied the constitutional violations as to all detainees, even though it would have entailed the release or transfer of only some of the detainees. The district court did not abuse its discretion in holding that Plaintiffs had satisfied the commonality, adequacy, and typicality requirements of Federal Rule of Civil Procedure 23(a) and the uniform remedy requirement of Rule 23(b)(2).[6] In the context of an Eighth Amendment challenge to inmate medical care policies, we likewise affirmed class certification under Rule 23(b)(2) where "a presently existing risk may ultimately result in different future harm for different inmates—ranging from no harm at all to death" because "every inmate suffers exactly the same constitutional injury when he is exposed to a single statewide . . . policy or practice that creates a substantial risk of serious harm." *Parsons v. Ryan*, 754 F.3d 657, 678, 689 (9th Cir.

---

[6] Defendants do not contest numerosity.

2014); *cf. Brown v. Plata*, 563 U.S. 493, 502 (2011) (affirming a class-wide injunction imposing a "court-mandated population limit" in state prisons to remedy Eighth Amendment violations due to "severe and pervasive overcrowding," which would require the release of only some inmates).

## VI.

Although we affirm the portions of the preliminary injunction order concluding that the district court possesses the power to grant injunctive relief and that Plaintiffs are likely to prevail on the merits of their due process claims, we nonetheless vacate the provisions of the preliminary injunction that ordered specific measures to be implemented at Adelanto.  The district court tailored those measures to respond to the circumstances at Adelanto as of mid-April.  In the intervening five months, those circumstances have changed dramatically.  For example, it now appears that Adelanto houses only 748 detainees, significantly fewer than the 1,370 detainees it held when the district court issued its preliminary injunction.  More pressingly—and despite the reduced population level—the facility is experiencing a COVID-19 outbreak, which was not the case when the preliminary injunction issued.  In response to the current outbreak, it seems the Government is now in the process of testing *all* Adelanto detainees for COVID-19, and it also has purportedly adjusted its procedures for "cohort[ing]" detainees.  The district court may have received further medical expert testimony or other evidence during the intervening months as well.  In short, the facts that motivated the district court's preliminary injunction no longer reflect the current realities at Adelanto.

The conditions at Adelanto appear to be evolving rapidly.  Unlike our court, the district court has been

continually apprised of developments at the facility and is better situated to assess what relief current conditions may warrant. We therefore decline to speculate about which provisions of the preliminary injunction should still apply. We vacate the provisions of the injunction ordering specific reductions in the detainee population and specific changes in conditions at the facility and remand to the district court for further proceedings consistent with this disposition and with the latest facts. *See Valentine v. Collier*, 960 F.3d 707, 707 (5th Cir. 2020) (per curiam) (vacating preliminary injunction based on changed circumstances); *id.* at 707 (Davis, J., concurring in the judgment) (concurring "because conditions have dramatically changed in the prison since the preliminary injunction issued, and vacating the preliminary injunction allows the district court to expeditiously conduct factfinding to determine what relief is necessary under the current circumstances").

We make some observations for the district court to consider on remand. First, we reiterate that the district court possesses broad equitable authority to remedy a likely constitutional violation. If the district court determines, based on current facts, that particular measures are necessary to ensure that conditions at Adelanto do not put detainees at unreasonable risk of serious illness and death, it may require such measures. The district court may, for example, require the provision of sufficient cleaning supplies and hand sanitizer, or a reduction in the population to a level that would allow for six-foot social distancing, if it concludes those actions are necessary to bring the conditions to a constitutionally adequate level. And, of course, the district court has authority to remedy a constitutional violation by ordering measures that it determines are necessary to counter the spread of an outbreak, including mandating medical isolation of detainees who have tested positive for COVID-

19 or who were likely exposed and are awaiting test results, and imposing a temporary moratorium on Adelanto's receiving new detainees.

Second, although our court previously stayed the district court's preliminary injunction except to the extent it required compliance with the CDC's guidelines for correctional and detention facilities, we think developments since the stay have made clear that those guidelines do not provide a workable standard for a preliminary injunction.  The guidance document spans 25 pages and makes hundreds of recommendations, many of which lack specificity.  More fundamentally, it contains key caveats, such as that its recommendations "may need to be adapted based on individual facilities' physical space, staffing, population, operations, and other resources and conditions."  Given the vagueness of that caveat, it is no surprise that the parties strongly disagree on whether the Government was complying with the CDC guidance even before this case was filed and have continued to disagree about what the CDC guidance means.  The guidance document's lack of specificity makes it a poor guidepost for mandatory injunctive relief.  *See* Fed. R. Civ. P. 65(d)(1)(B), (C) (an injunction must "state its terms specifically" and "describe in reasonable detail—and not by referring to the complaint or other document—the act or acts restrained or required").

Third, the district court should, to the extent possible, avoid imposing provisions that micromanage the Government's administration of conditions at Adelanto. Certain provisions in the preliminary injunction—such as the requirement that specific areas be cleaned "by a professionally trained cleaning staff," rather than by detainees or facility employees with a mix of duties—wade into facility administration at a granular level beyond what

is required to remedy the constitutional violation identified. These types of considerations are better left to the "professional expertise of corrections officials." *Bell v. Wolfish*, 441 U.S. 520, 540 n.23 (1979).

Fourth, any new provisions of future injunctive relief should stem from medical evidence properly before the court. The district court should refrain from relying on declarations filed in other litigation, as it did when it ordered that sleeping rooms or cells that contained toilets lacking integrated lids be limited to one person. *Cf. Hope v. Warden York Cnty. Prison*, — F.3d —, 2020 WL 5001785, at *9–10 (3d Cir. 2020) (criticizing reliance on evidence from prior case).

Finally, the injunction should, to the extent possible, reflect the scientific evidence about COVID-19 presented to the district court. For example, the preliminary injunction, as originally drafted, seemed to mandate that Adelanto staff must wear a mask even when working alone in an office, far away from detainees. We see no evidence in the current record that suggests wearing a mask in this specific situation would reduce COVID-19 transmission. If the district court determines on remand that scientific evidence supports ordering this measure, it should clearly identify the relevant evidence.

## VII.

Based on the foregoing, the preliminary injunction order is affirmed in part and vacated in part, and the case is

remanded for further proceedings consistent with this disposition.**[7]**

---

MILLER, Circuit Judge, concurring in part and concurring in the judgment:

I concur in the judgment, and I join all of the court's opinion except for Part IV, in which the court concludes that "the Government likely failed to meet its constitutional duty to provide reasonably safe conditions to Plaintiffs." Slip op. 17.

I agree with the court's statement of the controlling legal standard. The government has a duty to ensure that the conditions of confinement for those in its custody provide reasonable safety, and a plaintiff alleging a violation of that duty must show, among other things, that the "conditions put the plaintiff at substantial risk of suffering serious harm" and that the government "did not take reasonable available measures to abate that risk." *Gordon v. County of Orange*, 888 F.3d 1118, 1125 (9th Cir. 2018). Although the word "reasonable" might be taken to suggest something akin to the duty of reasonable care applied in negligence cases, the standard is more demanding than that: "[T]he plaintiff must 'prove more than negligence'" and must show "'something akin to reckless disregard.'" *Id.* (quoting *Castro v. County of Los Angeles*, 833 F.3d 1060, 1071 (9th Cir. 2016) (en banc)).

---

**[7]** Because the substantive provisions of the preliminary injunction are vacated, the stay pending appeal of that order is no longer in effect. *See Consejo de Desarrollo Economico de Mexicali, A.C. v. United States*, 482 F.3d 1157, 1174 n.7 (9th Cir. 2007). We accordingly denied as moot the emergency motion seeking to lift the stay when we earlier issued the unpublished version of this opinion.

That high standard reflects a recognition that the "operation of our correctional facilities is peculiarly the province of the Legislative and Executive Branches of our Government, not the Judicial." *Bell v. Wolfish*, 441 U.S. 520, 548 (1979); *see also DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 200 n.7 (1989) ("[T]he State 'has considerable discretion in determining the nature and scope of its responsibilities.'" (quoting *Youngberg v. Romeo*, 457 U.S. 307, 317 (1982))). The court appropriately draws upon that principle in directing the district court, at the remedial stage, to "avoid imposing provisions that micromanage the Government's administration of conditions at Adelanto." Slip op. 22. The district court must also consider it in addressing the antecedent question whether the government has acted with "reckless disregard."

The injunction we review today was issued based on the record before the district court in April. Perhaps the plaintiffs were likely to establish a constitutional violation on that record, or perhaps not, but at this point the question is academic. The situation at Adelanto has changed considerably since April, and our decision to remand will allow the district court to determine, based on a new record, whether the government's response has fallen short of constitutional standards.