**Gloria MUNGER, Personal Representative of the Estate of Lance K. Munger, deceased; and Donald M. Munger and Gloria Munger, individually, Plaintiffs–Appellants,**

v.

**CITY OF GLASGOW POLICE DEPARTMENT, Michael Sukut, Vernon Buerkle, Valley County Sheriff's Department, Brien Gault and Tim Nixdorf, Defendants–Appellees,**

**Michael Sukut, Vernon Buerkle, Valley County Sheriff's Department, Brien Gault and Tim Nixdorf, Third-party plaintiffs,**

v.

**William Fastje and John Doe No. 1 and John Doe No. 2, d/b/a Stockman Bar, and Patricia Mulligan, John Doe No. 3 and John Doe No. 4, d/b/a Stan's Saloon, Third-party defendants.**

No. 98–36090.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Aug. 7, 2000

Filed Sept. 6, 2000

Patricia O'Brien Cotter, Cotter & Cotter, Great Falls, Montana, for the plaintiffs-appellants.

Kevin Meek, Davis, Hatley, Haffman & Tighe, P.C., Great Falls, Montana, and Mark Higgins, Ugrin, Alexander, Zadick & Higgins, Great Falls, Montana, for the defendants-appellees.

Before: FLETCHER, HALL, and TASHIMA, Circuit Judges.

FLETCHER, Circuit Judge:

Gloria and Donald Munger appeal the district court's grant of summary judgment to the defendants-appellees in their suit alleging § 1983 and state law negligence causes of action.

## I.

The night of March 3, 1995 was a bitter cold one in Glasgow, Montana. The temperature at midnight was recorded at 11 degrees, with a windchill factor of minus 20–25 degrees. Lance Munger, a 35–year–old unemployed welder, was out drinking that night. After consuming a substantial amount of alcohol, he apparently became belligerent at Stan's Bar and got into heated arguments with other patrons.

The bartender called the police, asking for help with the disturbance. Munger was standing outside Stan's Bar when the police arrived, but he followed them inside. One of the police officers apparently took Munger physically by the arm and walked him out the front door again. The officers dispute this, saying that Munger walked outside without the use of physical contact. In any event, the parties agree that when he was ejected from the bar, Munger was wearing only jeans and a t-shirt.

According to the Mungers, Lance Munger was very obviously drunk. He was swaying back and forth, with unsure balance. His truck was parked near Stan's, but defendant Officer Buerkle told Munger not to drive. Nor was he free to reenter Stan's.

At this point, Munger walked away from the police and from Stan's and the other bars, heading toward an abandoned railway yard.[1] This was the last that anyone saw Munger walked.

---

1. The parties dispute whether there were any open establishments in the direction that

saw of Munger. The police allegedly went looking for him in their squad cars; they had located his coat inside Stan's Bar and were concerned about the fact that he was out in only a t-shirt. They did not find him.[2] The next day, Munger's body was found curled up in an alleyway two blocks from Stan's Bar. He had died from hypothermia.

Lance Munger's mother and father filed this suit in federal district court. The defendants are officers Michael Sukut, Vernon Buerkle, Brien Gault, and Tim Nixdorf ("the officers") and the City of Glasgow Police Department and the Valley County Sheriff's Department ("the police departments"). The Mungers allege that the officers and the police departments violated their constitutional duties, under the Due Process Clause of the Fourteenth Amendment, to protect Munger once they had placed him in danger by ejecting him from the bar in just a t-shirt in sub-freezing temperatures. They also assert claims under a state law negligence theory.

The district court granted summary judgment to the officers on the § 1983 claims on the basis of qualified immunity. The court subsequently granted summary judgment for the police departments "in light of the Court's summary judgment ruling on the section 1983 claims." It also granted summary judgment on the state law negligence claims.

## II.

The district court had jurisdiction over the § 1983 claims under 28 U.S.C. §§ 1331 and 1343. The district court exercised jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367. The district court entered a final judgment disposing of all claims, and appellants filed a timely notice of appeal. We have jurisdiction pursuant to 28 U.S.C. § 1291.

We review a district court's grant of summary judgment de novo. *See Robi v. Reed*, 173 F.3d 736, 739 (9th Cir.1999).

Summary judgment is proper only if, viewing the evidence in the light most favorable to the nonmoving party, there are no genuine issues of material fact and the court correctly applied the relevant substantive law. *See id.*

## III.

The plaintiffs-appellants first claim that the district court erred in granting summary judgment on the basis of qualified immunity to the officers on the § 1983 claims.

 Qualified immunity "'shield[s] [government agents] from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Behrens v. Pelletier*, 516 U.S. 299, 305, 116 S.Ct. 834, 133 L.Ed.2d 773 (1996) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). To evaluate a qualified immunity claim, we first ask whether the law governing the official's conduct was clearly established; if so, we ask whether under that law, and under the circumstances at issue, a reasonable officer could have believed the conduct was lawful. *See Katz v. United States*, 194 F.3d 962, 967 (9th Cir.1999) (citing *Somers v. Thurman*, 109 F.3d 614, 617 (9th Cir.1997) and *Act Up!/Portland v. Bagley*, 988 F.2d 868, 871 (9th Cir.1993)).

The district court found that the law governing the officers' conduct was clearly established: under the Due Process clause of the Fourteenth Amendment an officer may be held liable for failing to protect an individual where the state has placed that individual in danger through its affirmative conduct. However, it found that the defendants had met their burden of proving that a reasonable officer could have believed their conduct lawful, since "[u]nder the circumstances at issue the court finds that Munger was not affirmatively placed in danger by the officers."

---

**2.** The plaintiffs-appellants apparently challenge the officers' assertions that they ever searched for Munger. One of the plaintiffs' witnesses, Dave Chvilicek, testified that he did not see any squad cars cruising the area where Munger had walked. .

■ We affirm the district court's holding that the law was clearly established. Although the general rule is that the state is not liable for its omissions, *see DeShaney v. Winnebago County Dep't of Social Servs.*, 489 U.S. 189, 195, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989), there are several exceptions to this rule. Relevant here is the "danger creation" exception to the rule of non-liability. *See L.W. v. Grubbs*, 974 F.2d 119, 121 (9th Cir.1992). This exception exists where there is "affirmative conduct on the part of the state in placing the plaintiff in danger." *Id.*

■ We have previously applied the danger creation exception where a police officer ejected a woman from the vehicle in which she was a passenger, thus exposing her to external dangers including the possibility of harm from a third person. In *Wood v. Ostrander*, 879 F.2d 583 (9th Cir. 1989), an officer stopped the car in which Wood was a passenger, arrested the driver of the car, and impounded the car. *Id.* at 586. Though the stop occurred in a high-crime area, the officer told Wood to get out of the car. *Id.* The parties disputed whether the officer offered to help Wood get home. *Id.* In any event, the officer left, and Wood was subsequently raped. *Id.* We allowed Wood's § 1983 claim to proceed, denying the officer's qualified immunity defense because "[a] reasonable police officer who acted as Wood alleges Ostrander acted should have understood that what he was doing violated Wood's constitutional right to be free from an unjustified intrusion into her personal security in violation of her liberty interest under the Fourteenth Amendment." *Id.* at 596. *See also Grubbs*, 974 F.2d at 123 (holding that a female prison nurse had stated a claim under § 1983 when she alleged that the defendant prison officials selected a violent sex offender to work alone with her in the prison clinic, and she was subsequently raped by the offender). Thus, in March 1995, at the time of the events at issue in the case at hand, the law was clearly established that officers may be liable where they affirmatively place an individual in danger.

■ To determine whether the officers in this case acted reasonably, we must determine whether they did in fact affirmatively place Munger in danger. In examining whether an officer affirmatively places an individual in danger, we do not look solely to the agency of the individual, nor do we rest our opinion on what options may or may not have been available to the individual. Instead, we examine whether the officers left the person in a situation that was more dangerous than the one in which they found him.

In *Wood, supra*, we held that Wood had raised a triable issue as to whether the officer "affirmatively placed the plaintiff in a position of danger." 879 F.2d at 589. "The fact that Ostrander arrested [the driver], impounded his car, and apparently stranded Wood in a high crime area at 2:30 a.m. distinguishes Wood from the general public and triggers a duty of the police to afford her some measure of peace and safety." *Id.* at 590. In that case, there were factual disputes as to whether the officer made any inquiries as to Wood's ability to get home, and as to whether there were any "safe havens" in the neighborhood. *Id.* Viewing the evidence in the light most favorable to the non-movant, we denied the officer qualified immunity. *Id.* at 596.

In *Penilla v. Huntington*, 115 F.3d 707, 710 (9th Cir.1997), we held that the police had "clearly placed Penilla in a more dangerous position than the one in which they found him." There, the police officers responded to a 911 call, "examined Penilla, found him to be in grave need of medical care, canceled the request for paramedics, broke the lock and door jamb on the front door of Penilla's residence, moved him inside the house, locked the door, and left." *Id.* at 708. This court declined to grant the officers qualified immunity. *Id.* at 711.

In *Kneipp v. Tedder*, 95 F.3d 1199 (3d Cir.1996), a case that is factually very similar to this one, the Third Circuit held that police officers could be held liable by a

woman who suffered hypothermia after they detained her and then let her walk home, alone and drunk, on a cold night. Samantha Kneipp was extremely drunk and was walking home with her husband when she was stopped by the police about one third of a block from her home. *Id.* at 1202. The officers allowed her husband to go home, but detained Samantha somewhat longer. *Id.* The officers then allowed Samantha to walk home alone. *Id.* She never made it; she suffered hypothermia, causing permanent brain damage. *Id.* at 1203. Her guardians brought suit on her behalf, and the court held that "[a] jury could find that Samantha was in a worse position after the police intervened than she would have been if they had not done so. As a result of the affirmative acts of the police officers, the danger or risk of injury to Samantha was greatly increased." *Id.* at 1209.

■ In the case at hand, qualified immunity was raised in the context of a summary judgment motion, and so we view the evidence in the light most favorable to the nonmoving parties—the Mungers. *See Robi,* 173 F.3d at 739. Summary judgment on qualified immunity is not proper unless the evidence permits only one reasonable conclusion. Where "conflicting inferences may be drawn from the facts, the case must go to the jury." *LaLonde v. County of Riverside,* 204 F.3d 947, 959 (9th Cir.2000).

■ Furthermore, it is the defendants' burden to show that " 'a reasonable officer could have believed, in light of the settled law, that he was not violating a constitutional or statutory right.' " *Collins v. Jordan,* 110 F.3d 1363, 1369 (9th Cir.1996) (quoting *Gasho v. United States,* 39 F.3d 1420, 1438 (9th Cir.1994)).

Viewing the evidence in the light most favorable to the Mungers, we hold that the district court erred in concluding that the officers did not affirmatively place Munger in a position of danger. The officers affirmatively ejected Munger from a bar late at

night when the outside temperatures were subfreezing. They knew that Munger was wearing only a t-shirt and jeans, was intoxicated, was prevented by the officers from driving his truck or reentering Stan's Bar, and was walking away from the nearby open establishments. Furthermore, the fact that the officers went looking for Munger (or so claim), demonstrates that they were aware of the danger that he was in. It would seem indisputable, under this version of the facts, that the officers placed Munger "in a more dangerous position than the one in which they found him." *Penilla* 115 F.3d at 710. The district court therefore erred in granting the officers qualified immunity as a matter of law.

### IV.

■ The Mungers also appeal the district court's grant of summary judgment in favor of the municipal defendants. To hold a police department liable for the actions of its officers, the Mungers must demonstrate a constitutional deprivation, and show that the deprivation was visited pursuant to a police department custom or policy. *See Monell v. Dep't of Social Servs.,* 436 U.S. 658, 690–91, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). The "inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton v. Harris,* 489 U.S. 378, 388, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989).

After the district court had granted summary judgment to the individual officers on the basis that there was no constitutional violation, the plaintiffs conceded that summary judgment was proper with respect to the police departments. The district court granted summary judgment to the police departments "in light of the Court's summary judgment ruling on the section 1983 claims."[3] The Mungers contend that the district court's grant of summary judgment for the defendant police

---

**3.** As both parties agree, granting qualified immunity for the officers does not dispose of the

claims against the police departments. *See*

departments was based on the same improper factual determination—that the officers did not affirmatively place Munger in danger—as the grant of qualified immunity. They allege that if the court finds that the officers *did* affirmatively place Munger in danger, there is a genuine issue of material fact as to whether there was a constitutional deprivation, and they should be able to hold the police departments liable for failure to properly train and counsel the officers.

■ ▇▇▇ The police departments urge us to find that they cannot be held liable because the Mungers have not alleged an unconstitutional custom or policy. The Mungers asserted in their brief before this court that "it was the custom of the defendants to offer assistance to intoxicated persons, by taking those persons home, to another location, or as a last resort, to the law enforcement center so they could sleep it off, without making an arrest or filing any formal changes." They provided evidence documenting this policy and custom. Thus, the police departments argue, the Mungers implicitly argue against the existence of a custom that would hold the police departments liable under § 1983.

The unconstitutional policy or custom the Mungers allege, however, is not the failure to offer assistance to intoxicated persons, but rather the failure to *train* officers regarding appropriate assistance and treatment of intoxicated persons. In our view, a custom and policy of helping intoxicated individuals could be in place and yet the departments could have failed to implement the policy because they did not train their officers adequately.

Because summary judgment was granted to the police departments on the basis

of the lack of a constitutional violation on the part of the officers, the record as to the police departments' training policies and customs was not fully developed. The Mungers provided evidence regarding the police departments' "walk and talk" policies, under which officers are instructed, when encountering a person who has consumed alcohol, to assess the person's ability to walk and talk. However, the adequacy of this training is called into question by the officers' inappropriate handling, in this case, of a person who was obviously drunk and uncooperative. It also appears that the police departments may have failed to train their officers regarding the duty that arises when, through an officer's affirmative conduct, he or she exposes a person to potential danger from the elements or from a third person. Possibly the police departments failed to give necessary training to their officers regarding the special dangers posed by the harsh Montana winters.

The district court did not consider the police departments' training policies because it found no constitutional deprivation. We reverse because our finding that there are genuine issues of material fact as to the existence of a constitutional deprivation necessitates further consideration of the Mungers' claim that the deprivation was caused by the police departments' deliberate indifference in failing to adequately train the officers.

## V.

▇▇▇▇ The Mungers claim that the district court misapplied Montana law in granting summary judgment on the state law negligence claims.[4] We agree. Mon-

---

*Alexander v. City and County of San Francisco,* 29 F.3d 1355, 1359 (9th Cir.1994). However, finding no constitutional violation would dispose of those claims. *See infra.*

4. The Mungers also claim, in the alternative, that the district court erred in exercising supplemental jurisdiction over their state law claims after having dismissed the federal claims. We disagree. After having granted qualified immunity to the officers, the district

court retained jurisdiction over the § 1983 claims against the police departments. The court granted summary judgment as to these latter federal claims at the same time that it granted summary judgment on most of the state law negligence claims—in the August 10, 1998 order. Thus, the court was not exercising jurisdiction over most state law claims after having disposed of the federal claims.

The remaining negligence claims, which were dismissed two months later, were identi-

tana follows the traditional negligence test. "A claim of negligence must establish a legal duty, breach of that duty, and damages proximately caused by the breach." *Whitfield v. Therriault Corp.*, 229 Mont. 195, 745 P.2d 1126, 1127 (1987). The district court dismissed the state law negligence claims because it found that the Mungers had failed to establish a legal duty.

 Under Montana law, as under federal law, a police officer generally "has no duty to protect a particular individual absent a special relationship;" however, a duty to protect arises where a police officer takes affirmative steps that increase the risk of danger to an individual. *Nelson v. Driscoll*, 295 Mont. 363, 983 P.2d 972, 977, 981 (1999).

The *Nelson* case controls the case at hand. In *Nelson*, Trina and Stephen Nelson were driving home at approximately 1:43 a.m. after having been out drinking. *Id.* at 975. Officer Driscoll, observing Trina's erratic driving, pulled the couple over. *Id.* Although he ascertained that both had been drinking, and were probably impaired, he did not think that he had probable cause to make a DUI arrest. *Id.* He therefore told Trina not to drive: he would give the couple a ride home, or they could walk. *Id.* Trina told the officer she would call a friend for a ride. *Id.* Officer Driscoll observed Trina and Stephen for a time, then he drove off. *Id.* at 976. Trina began to walk alone toward her home— which was two miles away—along the public road. *Id.* She was struck and killed by a motorist. *Id.* Stephen brought suit against the officer under state negligence law and § 1983. *Id.*

Although the trial court granted summary judgment to the officer, holding that the officer owed Trina no legal duty, the Montana Supreme Court reversed. The rule, it stated, was that "one who assumes to act, even though gratuitously, may thereby become subject to the duty of acting carefully, if he acts at all." *Id.* at 981 (citation omitted). The court found that:

> Officer Driscoll knew Trina had been drinking and thought there was a possibility she might ·be impaired. He ·thought it unwise for Trina to drive home given the icy conditions and her possible impairment. He directed Trina to park her vehicle and told her that she and Stephen could either walk home or he would give them a ride. After Trina indicated she would call a friend for a ride, Officer Driscoll circled the block three times to ensure that Trina did not drive home. We conclude, as a matter of law, that by taking these affirmative steps to ensure Trina's safety, Officer Driscoll assumed a duty to protect Trina from harm.

*Id.* at 982.

In the case at hand, the district court held that no duty existed because it "determined that the officers did not affirmatively place Lance Munger in danger. Moreover, Munger was not taken into custody. Consequently, the officers owed Munger no common law duty of care." This was error. As in *Nelson*, the officers here intervened to eject Munger from a

---

cal in fact and similar in law to those already decided. Although the district court could have declined to exercise jurisdiction over those claims, it was not required to do so. "[A] federal district court with power to hear state law claims has discretion to keep, or to decline to keep, them under the conditions set out in [28 U.S.C.] § 1367(c) ... That state law claims 'should be dismissed if federal claims are dismissed before trial' ... has never meant that they must be dismissed." *Acri v. Varian Associates, Inc.*, 114 F.3d 999 (9th Cir.1997) (en banc) (quoting *United Mine*

*Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966)). In *Acri*, we noted that the district court's discretion should be "informed by the *Gibbs* values 'of economy, fairness, and comity.'" *Id.* at 1001. Since the remaining negligence claims were identical to the previously dismissed negligence claims and were based on the same factual allegations as the federal claims, and since the district court was fully familiar with the record, it was not abuse of discretion to decline to dismiss the state law claims.

bar and to prohibit him from getting in his truck. They stood by to watch him leave. They knew that he was impaired by alcohol, and that he was wearing insufficient clothing to survive in the bitter cold temperatures. *Nelson* directs us to find that a duty existed under these circumstances. We therefore reverse the district court grant of summary judgment on the negligence claims.

### VI.

For the foregoing reasons, we reverse the district court's grant of summary judgment for the individual officers on qualified immunity grounds, reverse the grant of summary judgment on the state law negligence claims, and reverse the dismissal of the § 1983 claims against the police departments. We affirm the district court's exercise of supplemental jurisdiction over the state law claims.

REVERSED and REMANDED for further proceedings consistent with this opinion.