**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

CLAUDIA HERRERA; CESAR ORTIZ,
*Plaintiffs-Appellants,*

v.

LOS ANGELES UNIFIED SCHOOL
DISTRICT, a public entity; JOSE
HUERTA; JOSE LOPEZ; DOES; LOS
ANGELES UNIFIED SCHOOL DISTRICT,
*Defendants-Appellees,*

and

COUNTY OF LOS ANGELES,
*Defendant.*

No. 20-55054

D.C. No.
8:17-cv-00069-
JVS-KES

OPINION

Appeal from the United States District Court
for the Central District of California
James V. Selna, District Judge, Presiding

Argued and Submitted August 30, 2021
Pasadena, California

Filed December 1, 2021

Before: Sandra S. Ikuta, Mark J. Bennett, and
Ryan D. Nelson, Circuit Judges.

Opinion by Judge R. Nelson

## SUMMARY[*]

### Civil Rights

The panel affirmed the district court's order granting summary judgment to defendants on a claim for deprivation of familial relationship, brought under 42 U.S.C. § 1983 by the parents of a disabled high school student who drowned while on a field trip to a pool.

The panel held that the Fourteenth Amendment's Due Process Clause generally does not provide an affirmative right to government aid, but a state's failure to protect may give rise to a § 1983 claim under the state-created danger exception, which applies when the state affirmatively places the plaintiff in danger by acting with deliberate indifference to a known or obvious danger. The panel held that following *Kingsley v. Hendrickson*, 576 U.S. 389 (2015), and *Castro v. Cty. of L.A.*, 833 F.3d 1060 (9th Cir. 2016) (en banc), an objective deliberate-indifference standard has been applied in excessive force and detention cases, but this court has continued to apply a subjective standard in all state-created danger claims and in non-detainee failure-to-protect claims. The panel therefore applied a subjective standard.

Plaintiffs contended that a school aide was deliberately indifferent because he recognized an unreasonable risk to their son and intended to expose him to that risk without regard for the consequences when (1) the boy returned to the pool after entering the locker room area and (2) earlier in the day when the aide allowed the boy to go to the pool, did not

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

enter the pool to watch him, and lost sight of him for at least a few minutes. The panel held that these facts, viewed in the light most favorable to plaintiffs, did not constitute deliberate indifference under the subjective test.

The panel addressed additional claims in an accompanying memorandum disposition.

## COUNSEL

Holly N. Boyer (argued) and Kathleen J. Becket, Esner Chang & Boyer, Pasadena, California; Michael S. Carrillo and Luis A. Carrillo, Carrillo Law Firm LLP, South Pasadena, California; for Plaintiffs-Appellants.

Joseph R. Zamora (argued), Law Offices of Joseph R. Zamora, Santa Monica, California; Rudulfo F. Ruiz, Vanderford & Ruiz LLP, Pasadena, California; for Defendants-Appellees.

## OPINION

R. NELSON, Circuit Judge:

Erick Ortiz, an autistic high school student, drowned while on a field trip in June 2014. The district court granted summary judgment to the school defendants on the parents' § 1983 claim for deprivation of familial relationship. Because there is no dispute that the school aide was unaware that Erick was in the pool area when he drowned, the school defendants cannot be liable under our subjective test for the

state-created danger exception.  We therefore affirm the district court.

## I

On a sunny summer day, young Erick and his tenth-grade classmates attended an end-of-year party at the Atlantic Avenue Park.  In the afternoon, Erick told school aide Lopez that he was going to the park's swimming pool, which was monitored by three lifeguards.  Lopez did not enter the pool area himself but watched Erick from a designated observation area, as required by pool rules.[1]  According to Plaintiffs, Lopez knew that Erick had asthma and could not swim.

Lopez generally watched Erick while he was in the swimming pool, although the parties contest his attentiveness.  It is undisputed, however, that Lopez saw Erick "exit[] the shallow end of the pool" and enter the locker room area.  He then left the observation deck to wait for Erick at the locker room exit.  Unbeknownst to Lopez, Erick did not change and instead returned to the pool.  Five minutes later, Lopez began to search for Erick.  When he checked the pool, he found lifeguards trying unsuccessfully to resuscitate Erick, who had drowned.  The summer day had ended in tragedy.

Erick's parents sued Lopez, the school district, and other employees on state law claims for negligence and wrongful death and a federal § 1983 claim for deprivation of familial relationship.  The district court granted summary judgment to Defendants on all claims.  We address Plaintiffs' § 1983

---

[1] Despite the rules, another individual aide did enter the pool area to observe another student.

claim in this opinion and their negligence and wrongful death claims in an accompanying memorandum disposition.

II

A district court's grant of summary judgment is reviewed de novo. *Dees v. Cnty. of San Diego*, 960 F.3d 1145, 1151 (9th Cir. 2020). We "must view the evidence in the light most favorable to the nonmoving party . . . and draw all reasonable inferences in that party's favor." *Id.* (quoting *E.E.O.C. v. Go Daddy Software, Inc.*, 581 F.3d 951, 961 (9th Cir. 2009)).

III

To recover damages under 42 U.S.C. § 1983, a plaintiff must prove that the defendant deprived him of a "constitutional right while acting under color of state law." *Tatum v. City & Cnty. of San Francisco*, 441 F.3d 1090, 1094 (9th Cir. 2006). The Fourteenth Amendment's Due Process Clause generally does not provide an affirmative right to government aid. *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 195–96 (1989). A state's failure to protect, however, may give rise to a § 1983 claim under the state-created danger exception "when the state affirmatively places the plaintiff in danger by acting with 'deliberate indifference' to a 'known or obvious danger.'" *Patel v. Kent Sch. Dist.*, 648 F.3d 965, 971–72 (9th Cir. 2011) (quoting *L.W. v. Grubbs*, 92 F.3d 894, 900 (9th Cir. 1996)).

For a defendant to act with deliberate indifference, he must "recognize[] the unreasonable risk and actually intend[] to expose the plaintiff to such risks without regard to the consequences to the plaintiff." *Grubbs*, 92 F.3d at 899 (citation omitted). Ultimately, a state actor needs to "know[]

that something is going to happen but ignore[] the risk and expose[] [the plaintiff] to it." *Id.* at 900.

In *Castro v. County of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016) (en banc), we departed from the deliberate indifference standard we had established in *Patel*. Relying on the Supreme Court's analysis of an excessive force claim in *Kingsley v. Hendrickson*, 576 U.S. 389, 395 (2015), we held that a pretrial detainee can state a due process violation for a government official's failure to act by showing

> (1) [t]he defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (2) [t]hose conditions put the plaintiff at substantial risk of suffering serious harm; (3) [t]he defendant did not take reasonable available measures to abate that risk, even though a reasonable officer in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (4) [b]y not taking such measures, the defendant caused the plaintiff's injuries.

*Castro*, 833 F.3d at 1071. The deliberate indifference inquiry in this context is set out in the third prong: the objective determination that "a reasonable officer in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious." *Id.* Later cases have applied the objective standard in excessive force and detention cases. But we have continued to apply the subjective standard in all state-created danger claims and in non-detainee failure-to-protect claims like the one presented here.

## A

Before *Castro v. County of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016) (en banc), we evaluated § 1983 claims under the single "deliberate indifference" standard articulated in *Clouthier v. County of Contra Costa*, 591 F.3d 1232, 1243–44 (9th Cir. 2010), *overruled by* 833 F.3d at 1070. The *Clouthier* standard incorporated *Farmer*'s subjective test, under which "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." 591 F.3d at 1242 (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). "[A]n official's failure to alleviate a significant risk that he should have perceived but did not" could not support liability under that subjective test. *Id.* (quoting *Farmer*, 511 U.S. at 838).

Then came *Kingsley*, in which the Supreme Court held that a pretrial detainee's excessive force claim could be proven by showing that the officers' use of force was objectively unreasonable. 576 U.S. at 395–97. The Court in *Kingsley* explained that an excessive force claim raises two questions about the defendant's state of mind: the first with respect to his intent to "bring[] about certain physical consequences," and the second regarding "whether his use of force was 'excessive.'" *Id.* at 395. The objective standard applied only to the latter; *i.e.*, whether the use of force was excessive. *Id.* at 396–97. The Court gave three justifications for using an objective standard. First, it noted that plaintiffs can succeed on due process claims with only objective evidence that the challenged use of force was unreasonable. *Id.* at 398–99. Second, it found the objective standard workable. *Id.* at 399. And third, it concluded that the objective standard adequately protected officers acting in good faith. *Id.* at 399–400.

B

Following *Kingsley*, we overruled *Clouthier* "to the extent that it identified a single deliberate indifference standard for all § 1983 claims and to the extent that it required a plaintiff to prove an individual defendant's subjective intent to punish in the context of a pretrial detainee's failure-to-protect claim." *Castro*, 833 F.3d at 1070. In *Castro*, we explained that, as to a defendant's mental state, detainee failure-to-protect claims require us to consider whether the defendant (1) "made an intentional decision with respect to the conditions under which the plaintiff was confined" and (2) "did not take reasonable available measures to abate that risk." *Id.* at 1071. The objective standard applied only to analyzing whether the defendant's actions were reasonable. *Id.* We thus continued to require a pretrial detainee's failure-to-act claim to establish that the state defendant made an intentional decision regarding conditions of confinement. The objective standard applied only to the deliberate indifference prong: whether the defendant's decision to bring about (or allow) those conditions was objectively unreasonable in light of the risk to the pretrial detainee.

To be sure, the failure-to-protect claim in *Castro* differed from the excessive force claim in *Kingsley* in one important aspect: excessive force claims, unlike failure-to-protect claims, require an affirmative act. *Id.* at 1067. But we ultimately concluded that there were "significant reasons" to extend the objective standard to detainee failure-to-protect claims. *Id.* at 1067–70. Those reasons included the lack of a state-of-mind requirement in § 1983, the common federal right and nature of harm involved, the claims' shared basis in the Fourteenth Amendment Due Process Clause, and

*Kingsley*'s broad reference to "challenged governmental action" (rather than only "force"). *Id.* at 1069–70.

We have since held that *Castro*'s rule applies to at least two other types of due process claims in the detention context: medical-care claims, *see Gordon v. County of Orange*, 888 F.3d 1118, 1124–25 (9th Cir. 2018), and civil immigration detainee failure-to-protect claims under the Fifth Amendment, *see Roman v. Wolf*, 977 F.3d 935, 943 (9th Cir. 2020). In *Gordon*, we echoed *Castro*'s "significant reasons" for applying the objective standard. 888 F.3d at 1124. We also noted that both the Supreme Court and our court have treated medical-care claims "substantially the same as other conditions of confinement violations." *Id.* And in *Roman*, we recognized the government's constitutional duty "to provide conditions of reasonable health and safety to people in its custody." 977 F.3d at 943 (citing *DeShaney*, 489 U.S. at 199–200). We cited *Castro* and *Gordon* to apply the objective standard to analyze whether the defendant's actions were reasonable. *Id.*

## C

Outside the detention context, we have also applied the objective standard to excessive force claims. *See, e.g.*, *Cortesluna v. Leon*, 979 F.3d 645, 651–52 (9th Cir. 2020) (applying objective standard without discussion). But for failure-to-act claims brought by non-detainees, we have declined to decide whether *Castro* applies, *see Dent v. Sessions*, 900 F.3d 1075, 1083 (9th Cir. 2018), and continued to apply a purely subjective test for deliberate indifference, *see, e.g.*, *Martinez v. City of Clovis*, 943 F.3d 1260, 1274 (9th Cir. 2019) (officers' failure to protect domestic abuse victim); *Pauluk v. Savage*, 836 F.3d 1117, 1125 (9th Cir. 2016) (employee's exposure to dangerous mold). Because Erick was not detained at the time of his death and his

parents' § 1983 claim arises out of Lopez's alleged failure to protect their son, their claim is a non-detainee failure-to-protect claim. We therefore apply a purely subjective standard, consistent with our precedent, requiring the plaintiff to show that the state actor recognized an unreasonable risk and actually intended to expose the plaintiff to such risk. *Martinez*, 943 F.3d at 1274.

Two justifications could be raised in favor or applying a purely subjective standard in failure-to-protect claims brought by non-detained plaintiffs, but neither is persuasive. First, failure-to-protect claims do not include the kind of affirmative action involved in an excessive force claim. But this is also the case for detainee failure-to-protect claims, to which we apply the objective standard. *See Castro*, 833 F.3d at 1069. Second, the government does not have an obligation to provide food, medical care, and safety to those not in its custody. Even so, *Castro*'s "significant reasons" to extend the objective standard apply regardless of that obligation. *See id.*

Absent our precedent in *Dent*, *Martinez*, and *Pauluk*, we may have been inclined to interpret *Kingsley* and *Castro* to require Plaintiffs to show (1) that Lopez made an intentional decision to allow Erick to be exposed to the risk posed by the pool without Lopez's supervision, and (2) it was objectively unreasonable to expose Erick to that risk. This formulation of the failure-to-protect test would mirror the logic of *Kingsley* and *Castro*, which looks to whether the defendant intended the physical consequences of his actions and applies the objective deliberate indifference standard only to evaluate whether the action taken, considering what was known to the defendant at the time, was reasonable. *See Kinglsey*, 576 U.S. 395–96; *Castro*, 833 F.3d at 1070. But because, post-*Kingsley* and post-*Castro*, we have continued

to apply a purely subjective deliberate indifference test to non-detainee failure-to-protect claims, we also do so here. *See Dent*, 900 F.3d at 1083; *Martinez*, 943 F.3d at 1274; *Pauluk*, 836 F.3d at 1125.

## IV

According to Plaintiffs, the evidence when viewed in their favor could lead a reasonable juror to conclude that Lopez was deliberately indifferent because he recognized an unreasonable risk to Erick and intended to expose him to that risk without regard for the consequences. They contend that Lopez was deliberately indifferent (1) when Erick returned to the pool after entering the locker room area and (2) earlier in the day when Lopez allowed Erick to go to the pool, did not enter the pool area to watch Erick, and lost sight of Erick for at least a few minutes. But these facts, when taken in the light most favorable to Plaintiffs, do not constitute deliberate indifference under our subjective test.

## A

Concerning Erick's return to the swimming pool, the district court held that there was no genuine dispute regarding the fact that "Lopez was not aware that there was any immediate danger in losing sight of [Erick] because he thought he was in the locker room changing," and that even if Lopez did not supervise Erick as closely as he could have, Lopez "did not abandon [Erick] to an unattended pool: three life guards were present." *Herrera v. Los Angeles Unified Sch. Dist.*, No. SACV1700069JVSKESX, 2018 WL 3816741, at *9 (C.D. Cal. July 3, 2018). The court therefore held that there was no genuine dispute as to any material fact regarding whether Lopez acted with deliberate indifference.

In granting Lopez's motion for summary judgment, the district court rightly relied on our decision in *Patel*. In that case, a disabled student's mother discovered that her daughter was exchanging graphic sexual emails with male students; in response, the school created an IEP that placed her in a "self-contained classroom" with a single special-education teacher. 648 F.3d at 968–69.

To foster the student's development, the teacher allowed the student to visit the restroom on her own while monitoring her time in the restroom and listening for any noises inside the restroom. *Id.* at 969. Despite these precautions, the student had sex with another student on several occasions. *Id.* at 969–70. The student's mother alleged that the school violated her daughter's rights under the Due Process Clause by failing to protect her. *Id.* at 968.

We affirmed summary judgment for the defendants because the teacher "did not know about any immediate risk." *Id.* at 975. Moreover, the teacher "was fairly active in protecting" the student. *Id.* at 976. For instance, "[s]he spoke separately with the two students about their hugging in the hallway," and "rushed out of her classroom to prevent an incident between them as soon as she realized they were both gone at the same time." *Id.* We noted that "[a]t worst, [the teacher] committed a lapse in judgment." *Id.*

As in *Patel*, there is no genuine dispute that Lopez was unaware of any immediate danger to Erick because he thought Erick was in the locker room. And Plaintiffs have raised no genuine dispute as to the fact that even if Lopez did not supervise Erick as closely as he could have, Lopez did not entirely abandon Erick to the risks of the pool; three lifeguards were also generally responsible for student safety.

Plaintiffs provide no evidence that Lopez knew of an immediate threat to Erick after he watched him enter the locker room area. Even assuming Lopez knew that Erick had asthma and could not swim, and lost sight of Erick while he was in the pool earlier that afternoon, the parties agree that Lopez saw Erick enter the locker room area. Like the teacher in *Patel*, Lopez waited outside the locker room to protect Erick's privacy and foster his independence. It was during that time, when Lopez could not have subjectively expected any immediate danger, that Erick drowned.

Under our deliberate indifference analysis, Plaintiffs must proffer facts suggesting that Lopez subjectively recognized the relevant risk that Erick could drown while in the pool area. *See supra* Part III.C. Plaintiffs failed to do so: Lopez had no "actual knowledge or willful blindness of impending harm," *Grubbs*, 92 F.3d at 900 (cleaned up), because he believed that Erick was still in the locker room. He was subjectively unaware that Erick was exposed to the dangers of the pool and therefore cannot be liable for his death.

Plaintiffs contend that a jury could simply "disbelieve" Lopez's testimony that he didn't know Erick had returned to the pool. But they provide no evidence that Lopez should be disbelieved, so there is no genuine dispute of fact on that point. Instead, they reiterate that Lopez did not go inside the enclosed pool, as another aide did, and lost track of Erick earlier in the day. None of these facts goes to Lopez's awareness of Erick's location at the time of his death. Because there is no evidence that Lopez deliberately left Erick in danger, there is no genuine issue of material fact on that point.

B

Plaintiffs also argue that, aside from not watching Erick while he was in the locker room, Lopez's earlier decisions (*e.g.*, not to enter the pool area with Erick and losing sight of Erick earlier in the day) constituted deliberate indifference. But when considered in context, no reasonable juror could find that Lopez was deliberately indifferent to Erick's safety. This is particularly true given that there were three lifeguards at the pool; even if Lopez were at times inattentive to Erick, no reasonable juror could find that Lopez intended to expose Erick to an unreasonable risk, given that Erick was never completely unsupervised.

In evaluating deliberate indifference, circumstances are vital in contextualizing a defendant's decisions. Three cases illustrate the importance of context. In *Hernandez v. City of San Jose*, 897 F.3d 1125, 1129 (9th Cir. 2018), we held that deliberate indifference had been sufficiently alleged against police defendants who supervised a political rally where attendees were injured. As in similar rallies in other cities, a crowd of protesters waited outside the convention halls. *Id.* Despite knowing about violence that had broken out at the convention center earlier that evening and at similar events, police directed rally attendees into the crowd of protesters. *Id.* at 1130. Then, when attendees and protestors clashed, police avoided intervening in fear of sparking a riot. *Id.* at 1129.

In *Munger v. City of Glasgow Police Department*, 227 F.3d 1082, 1084 (9th Cir. 2000), police were called to confront a belligerent patron at a local bar. The man was intoxicated and wore only jeans and a t-shirt. *Id.* Even so, police ejected him from the bar into the subfreezing temperatures outside, and told him not to reenter the bar or drive. *Id.* Although police later went looking for him, the man died of hypothermia. *Id.* at 1085.

And in *Kennedy v. City of Ridgefield*, 439 F.3d 1055 (9th Cir. 2006), the police promised to patrol a neighborhood after a family informed them that their neighbor's son had abused their daughter, lit a cat on fire, and broke into his girlfriend's house. *Id.* at 1057–58, 1063. The police did not begin patrols, however, and the neighbor broke into the family's house and killed two of the family members. *Id.* at 1058. As in *Hernandez* and *Munger*, the police left plaintiffs completely unprotected against a known risk. We held in each of these cases that, based on their subjective knowledge, the police could be deliberately indifferent to the risk of harm.

Plaintiffs emphasize that, like the plaintiffs in those cases, "the danger [to Erick] was obvious and [Lopez] placed the decedent in a highly vulnerable condition." To be sure, as we explained in *Munger*, we "examine whether the [defendant] left the person in a situation that was more dangerous than the one in which they found him." 227 F.3d at 1086. And in the case at hand, allowing Erick to enter the pool area arguably placed him in a more dangerous position than if he had not been allowed to swim.

But allowing Erick to enter a "more dangerous position" does not end our deliberate indifference analysis. A crucial premise of our findings of alleged deliberate indifference in *Hernandez*, *Munger*, and *Kennedy* was that plaintiffs were left without protection. In *Hernandez*, the police not only led plaintiffs directly into a dangerous situation, but also allegedly "witnessed the violence firsthand, or were at least informed of it, but . . . did nothing." 897 F.3d at 1130. And in *Munger*, "the last that anyone saw of [plaintiff]" was him "heading toward an abandoned railway yard." 227 F.3d at 1084–85. The police, apparently realizing the potential threat, later searched for plaintiff in vain. *Id.* at 1085. In

*Kennedy*, the police knew of the danger and left the neighborhood totally without protection.  439 F.3d at 1058.

But in the case at hand, the undisputed evidence establishes that Erick was never left completely without protection.  Lopez observed Erick while he was in the pool, and three lifeguards also monitored the area.  Deliberate indifference requires more: with at least four individuals tasked with supervising Erick while in the pool, Lopez neither abandoned Erick nor left him completely without protection.

V

Lopez was unaware that Erick had reentered the pool area at the time of Erick's drowning; he could not have been aware of the danger to Erick, and he did not otherwise act with deliberate indifference under our subjective standard. The district court therefore properly granted summary judgment to Defendants.

**AFFIRMED.**