NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

JUN 25 2026

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

DEBORAH MOLLER, an individual and successor-in-interest of Bret Breunig, deceased,

Plaintiff - Appellant,

v.

COUNTY OF SAN BERNARDINO; BREANA FITE, an individual,

Defendants - Appellees,

No. 25-74

D.C. No.
5:22-cv-01306-DSF-MAR

MEMORANDUM[*]

Appeal from the United States District Court
for the Central District of California
Dale S. Fischer, District Judge, Presiding

Argued and Submitted May 21, 2026
Pasadena, California

Before: N.R. SMITH, BENNETT, and MENDOZA, JR., Circuit Judges;
Partial Concurrence and Partial Dissent by Judge Mendoza.

Deborah Moller, the mother and successor-in-interest of Bret Breunig, appeals

the district court's grant of summary judgment on her various 42 U.S.C. § 1983

claims against San Bernardino County Deputy Breana Fite based on qualified

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

immunity, her claim for municipal liability against the County of San Bernardino, and her claim for a violation of California's Bane Act.[1] Moller also appeals the district court's grant of judgment as a matter of law on her negligence claim brought under California law. We have jurisdiction under 28 U.S.C. § 1291.[2] We affirm.

1.	In reviewing whether an individual is entitled to summary judgment on the basis of qualified immunity, the panel must engage in a two-step inquiry asking first "whether the facts, viewed in the light most favorable to the plaintiff, demonstrate that the [officers] violated a constitutional right," and second, "whether that right was 'clearly established' at the time of the alleged constitutional violation." *Peck v. Montoya*, 51 F.4th 877, 887 (9th Cir. 2022) (quoting *Tolan v. Cotton*, 572 U.S. 650, 655–56 (2014) (per curiam)). It is within our "sound discretion [to decide] which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). Exercising our discretion to do so, we decide this case at

---

[1] Because Moller failed to present any argument that the district court erred in granting summary judgment on her failure to protect and interference with familial relationship claims, those claims will not be considered. *See Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003).

[2] Moller's failure to list the summary judgment order in her notice of appeal does not divest this court of appellate jurisdiction over the summary judgment order. Moller's intent to appeal that order "can be fairly inferred and the appellee is not prejudiced by the mistake" because the summary judgment issues were discussed extensively in her opening brief. *Lynn v. Sheet Metal Workers' Int'l Ass'n*, 804 F.2d 1472, 1481 (9th Cir. 1986) (citation omitted), *aff'd*, 488 U.S. 347 (1989).

qualified immunity's second step based on the lack of sufficiently controlling precedent to clearly establish Moller's special relationship and state-created danger claims.

As to Moller's special relationship claim, she relies solely on *Lum v. County of San Joaquin*, No. 10-CV-1807-LKK, 2012 WL 1027667 (E.D. Cal., Mar. 23, 2012), to clearly establish a constitutional right. *Lum* does not clearly establish Moller's asserted right for two reasons. First, *Lum* is an unpublished district court opinion, which is not sufficiently "controlling" to clearly establish a constitutional violation for purposes of qualified immunity. *Sharp v. Cnty. of Orange*, 871 F.3d 901, 911 (9th Cir. 2017). Second, *Lum* is not sufficiently similar to this case to clearly establish a constitutional right, because there is a material difference in the level of custody that the respective plaintiff-decedent in each case was placed. In *Lum*, the plaintiff-decedent was arrested, booked into the local jail, and then placed in a holding cell for approximately seven hours before being released. *Lum*, 2012 WL 1027667, at *1–2. The Supreme Court in *DeShaney v. Winnebago County Department of Social Services* established that the types of custody triggering the special relationship exception are "incarceration, institutionalization, or other similar restraint of personal liberty." 489 U.S. 189, 200 (1989). *Lum* fits the description of "incarceration," but being detained for a 13-minute-long car ride does not. Thus, *Lum* does not clearly establish that Breunig's alleged detainment was a

"similar restraint of personal liberty" to being incarcerated or institutionalized.  *Id.*

As to Moller's state-created danger claim, she relies upon *Munger v. City of Glasgow Police Department*, 227 F.3d 1082 (9th Cir. 2000), and *Wood v. Ostrander*, 879 F.2d 583 (9th Cir. 1989), to clearly establish a constitutional right.  Neither *Munger* nor *Ostrander* clearly establish Moller's asserted constitutional right, because they present factual differences that materially impact the deliberate indifference requirement of a state-created danger claim.  *See Murguia v. Langdon*, 61 F.4th 1096, 1111 (9th Cir. 2023) ("Deliberate indifference is 'a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action.'" (citation omitted)).  In *Munger*, an officer left a "very obviously drunk" individual out in the subfreezing temperatures wearing only a t-shirt and jeans, thus making hypothermia both a known and obvious consequence of the officer's action.  227 F.3d at 1084, 1087.  And in *Ostrander*, an officer left an individual in an area with "the highest aggravated crime rate in the county," thus making the possibility of an aggravated crime both a known and obvious consequence of the officer's action.  879 F.2d at 586, 588.  Deputy Fite left Breunig on the side of the street near a train crossing, but it was not a known and obvious consequence of that action that Breunig would twice attempt to jump onto that train

4                                        25-74

and harm himself in the process.[3]  For this reason, neither *Munger* nor *Ostrander* clearly establish that Deputy Fite acted with the requisite deliberate indifference.

2.	We affirm the district court's grant of summary judgment to the County of San Bernardino on Moller's claim for municipal liability under *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978).  Moller has the burden of showing "that the constitutional violation occurred pursuant to a 'longstanding practice or custom.'"  *Christie v. Iopa*, 176 F.3d 1231, 1235 (9th Cir. 1999) (citation omitted).  Moller provides three examples, including the instant case, of the County of San Bernardino providing courtesy rides in an unconstitutional manner.  These examples are insufficient to establish a longstanding practice or custom.  First, Moller cannot rely on *Pleasant v. Miranda*, No. 20-CV-675, 2021 WL 3160190 (C.D. Cal. June 24, 2021), *aff'd*, *Pleasant v. Miranda*, 2022 WL 2304221 (9th Cir. 2022), as evidence of an unconstitutional custom, because in *Pleasant* the court determined that "no constitutional violation occurred" in relation to an officer providing a courtesy ride.  *Id.* at \*6.  Second, Moller's two remaining examples of supposed unconstitutional conduct are insufficient to show a "longstanding practice or custom" because the two incidents, separated by a gap of

---

[3] The dissent contends that the majority is not construing all facts in Moller's favor because "how and why Breunig was fatally struck by the train is a contested factual question not appropriate for resolution at summary judgment."  But we are not resolving any disputed issues of fact.  It is undisputed that Breunig approached and attempted to board the train, and that this attempt resulted in his ultimate harm.

twelve years, do not show that Moller's proposed custom is "founded upon [a] practice[] of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996).

3.     We affirm the district court's grant of summary judgment on Moller's Bane Act claim. The Bane Act creates a cause of action against a person if that person "interferes by threat, intimidation, or coercion . . . with the exercise or enjoyment by any individual or individuals of rights secured by the Constitution or laws of the United States." Cal. Civ. Code § 52.1. Even when viewed in the light most favorable to Moller, there is no evidence in the record that Breunig was threatened, intimidated, or coerced even while allegedly detained. Deputy Fite telling Breunig to "get out" of the vehicle, after Breunig repeatedly requested to exit the vehicle and threatened to defecate if he were not allowed to do so, cannot be reasonably interpreted as a threat or coercive action.

4.     We affirm the district court's grant of judgment as a matter of law on Moller's negligence claim under California law. The "standard [for judgment as a matter of law] largely 'mirrors' the summary-judgment standard, the difference being that district courts evaluate Rule 50(a) motions in light of the trial record rather than the discovery record." *Dupree v. Younger*, 598 U.S. 729, 731–32 (2023) (citation omitted). When ruling on a motion for judgment as a matter of law, courts

6                                                                25-74

"view all evidence in the light most favorable to the nonmoving party, draw all reasonable inferences in favor of the non-mover, and disregard all evidence favorable to the moving party that the jury is not required to believe." *Shafer v. Cnty. of Santa Barbara*, 868 F.3d 1110, 1115 (9th Cir. 2017) (citation omitted).

The district court properly granted judgment as a matter of law because Deputy Fite's decision to give Breunig a courtesy ride did not impose upon her a legal duty "to protect [Breunig] from [his] own suicidal, reckless or irrational subsequent conduct." *See Hernandez v. KWPH Enters.*, 116 Cal. App. 4th 170, 180 (2004). *Hernandez* requires this result, even if Moller can prove that Deputy Fite knew (or should have known) that Breunig "may pose a danger" to himself. *See id.* at 178 (rejecting the proposition that "when those who accept the responsibility of caring for others learn that their charges may pose a danger to themselves, they owe a duty of reasonable care to prevent such harm"). Even if duty were to be established, the connection between Deputy Fite's conduct and the injury realized by Breunig was not "within the scope of the risk created by" Deputy Fite's actions. *Novak v. Cont'l Tire N. Am.*, 22 Cal. App. 5th 189, 197 (2018). Lastly, the district court correctly determined that Deputy Fite was entitled to an affirmative defense to liability because Breunig's attempts to jump onto the train constituted a superseding cause of his harm. *See Chanda v. Fed. Home Loans Corp.*, 215 Cal. App. 4th 746, 755–56 (2013).

**AFFIRMED.**

*Moller v. County of San Bernardino, et al.*, No. 25-74

MENDOZA, JR., Circuit Judge, concurring in part, dissenting in part:

Deputy Breana Fite told Bret Breunig, "you just told me that you're withdrawing. I'm not going to drop you off on the side of the road." Minutes later, she dropped him off on the side of the road. She saw a train racing along nearby tracks. She left. Soon after, Breunig was struck and killed by the train.

I concur with much of the majority's disposition, but I must dissent as to their finding that there was no state-created danger here. Deputy Fite's actions exposed Breunig "to a danger which he . . . would not have otherwise faced." *Kennedy v. City of Ridgefield*, 439 F.3d 1055, 1061 (9th Cir. 2006) (citation modified). When she found Breunig, he was next to a hospital. She left him alone, near a moving train rather than a hospital, limping and in withdrawal.

"Although our case law on the [state-created danger] exception is somewhat scattershot, two clear requirements have emerged." *Patel v. Kent Sch. Dist.*, 648 F.3d 965, 974 (9th Cir. 2011). First, there must be affirmative conduct by the state that placing the plaintiff in danger. *Id.* Second, the state must act with "deliberate indifference to a known or obvious danger." *Id.* (citation modified). Here, both requirements are satisfied. Deputy Fite chose to help Breunig into her car and to provide a courtesy ride. When it became clear that dropping him at his home would not be feasible, her statements suggest that she knew not to "drop [him] off

on the side of the road." And yet that is exactly what she did, despite knowing that he was struggling to walk, that he was in withdrawal, and that a train was speeding past nearby.

*Munger v. City of Glasgow Police Department*, 227 F.3d 1082 (9th Cir. 2000) and *Wood v. Ostrander*, 879 F.2d 583 (9th Cir. 1989) should guide our analysis; they are not as neatly distinguishable as the majority maintains. *Munger* concerns a man who died of hypothermia after he was removed from a bar by police officers who told him not to drive. 227 F.3d at 1084–85. *Wood* concerns a woman who was raped by a man she had accepted a ride from after state troopers arrested her companion for drunk driving and left her by the side of the road. 879 F.2d at 586.

The majority maintains that the *Munger* decedent's death by hypothermia was an obvious danger because he was drunk, wearing a T-shirt, and removed from the bar on a cold night. They reason that *Wood*'s outcome was similarly obvious because the woman was left alone in a high-crime area. The majority argues that Breunig's fate was not obvious because he "harm[ed] himself" by attempting to board a moving train. First, I will note that how and why Breunig was fatally struck by the train is a contested factual question not appropriate for resolution at summary judgment. Applying the appropriate standard, we must construe all facts

2

and make all reasonable inferences in favor of Moller, the non-moving party. *Wood*, 879 F.2d at 586–87.

Furthermore, finding a "known or obvious danger" does not require that the party harmed by state action make perfect choices. Of course, Breunig should have stayed away from the train. But the *Munger* decedent should have walked into one of the "other bars" nearby rather than walking toward an "abandoned railway yard." 227 F.3d at 1084. And one could argue that the *Wood* victim should not have accepted a ride from a stranger.[1] Their flawed choices did not compel this court to find in either case that the harm they suffered was not known or obvious. The reasoning should be no different here. We know that Deputy Fite left Breunig by the side of the road, rather than at a hospital as she had promised to do. She did this even though she saw a moving train nearby and knew that Breunig was both in withdrawal and struggling to walk. There was obvious danger.

In *Herrera v. Los Angeles Unified School District*, this court found that a state actor had not acted with deliberate indifference because he did not "abandon" the decedent or leave him "completely without protection." 18 F.4th 1156, 1163–64 (9th Cir. 2021). This case presents a striking contrast. It would be difficult to

---

[1] In *Wood*, we concluded that "we cannot resolve on our review of summary judgment whether Wood acted unreasonably by accepting a ride with an unknown man." 879 F.2d at 590.

3

characterize Deputy Fite's final actions toward Breunig as anything other than abandonment. So I must respectfully dissent.